2002 UT 83

**Joseph R. BOUD, Trustee of the Diane Mansell Boud Revocable Trust, Plaintiff and Appellant,**

v.

**SDNCO, INC., dba Wasatch Marine, and KCS International Inc., dba Cruisers Yachts, Defendants and Appellees.**

No. 20001020.

Supreme Court of Utah.

Aug. 13, 2002.

Jon H. Rogers, Salt Lake City, for plaintiff.

John W. Call, Curtis C. Nesset, Salt Lake City, for defendant.

DURRANT, Associate Chief Justice:

## INTRODUCTION

¶ 1 Appellant Joseph Boud seeks rescission of his contractual agreement to purchase a luxury yacht from appellee KCS International, Inc., dba Cruisers Yachts ("Cruisers"), because of mechanical and electrical problems with the yacht. Boud appeals the district court's grant of summary judgment in favor of Cruisers. This case presents three main questions. First, did a sales brochure containing a photograph of the model Boud purchased and an accompanying caption describing the yacht create an express warranty, and if so, was that express warranty disclaimed? Second, did Cruisers engage in deceptive sales practices by including the photograph and caption in its sales brochure? Third, did the photograph and accompanying caption constitute negligent misrepresentations?

¶ 2 We conclude that an express warranty was not created by the brochure and that even were this the case, the parties' written contract effectively disclaimed any warranty other than the limited warranty provided for in the contract itself. Because no express warranty was created, we further conclude that Boud's allegations that Cruisers engaged in deceptive sales practices or made negligent misrepresentations also fail. We therefore affirm the district court's decision granting summary judgment in favor of Cruisers.

## BACKGROUND

¶ 3 It is well established that "in reviewing a grant of summary judgment, we view the facts and all reasonable inferences drawn therefrom in the light most favorable to the nonmoving party." *Higgins v. Salt Lake County,* 855 P.2d 231, 233 (Utah 1993). We recite the facts of this case accordingly.

¶ 4 In December 1998, Boud visited Wasatch Marine, a Salt Lake City retailer run by SDNCO, Inc., that sells yachts manufactured by Cruisers. Wasatch Marine gave Boud a copy of Cruisers' 1999 sales brochure. Boud read and reviewed this brochure, paying particular attention to a page that contained a photograph of Cruisers' 3375 Esprit model apparently moving at a high rate of speed. Accompanying the photograph was a caption that read as follows:

> Offering the best performance and cruising accommodations in its class, the 3375 Esprit offers a choice of either stern drive or inboard power, superb handling and sleeping accommodations for six.

¶ 5 Due in part to the depictions in the brochure, Boud agreed to buy a 3375 Esprit model yacht for over $150,000. In late December 1998, he put down a $15,000 deposit and agreed to take delivery of the yacht in the spring of 1999. On May 10, 1999, Boud paid the balance of the sales price; he then took the yacht for a test drive and signed a sales contract on May 20. This contract indicated that Boud would receive a $476 refund, as he had overpaid. During the test drive on May 20, 1999, and a subsequent test drive approximately a week later, the yacht manifested several electrical and mechanical problems. Pursuant to a limited warranty that accompanied the written contract, Wasatch Marine serviced the yacht and attempted to fix the problems.

¶ 6 A subsequent test drive of the yacht in early June revealed that problems still existed with the yacht. Boud claims that these problems included (1) difficulty shifting gears, (2) the system alarm going off at idling speed, (3) partial failure of the air conditioning system, (4) unexplained sounding of the carbon monoxide detector, (5) a malfunctioning generator, and (6) misalignment of the rear door. Due to these mechanical problems, Boud sought to rescind the sales agreement. Cruisers responded by offering to repair or replace any defective

parts as per the limited warranty. Boud then commenced this action.

¶ 7 In his amended complaint, Boud relied on three independent theories. First, he argued that the photograph and caption were themselves an express warranty, and that Cruisers and Wasatch Marine failed to provide him with a yacht that satisfied that warranty. Second, he asserted that, by putting forth the photograph and caption, Cruisers had engaged in deceptive sales practices in violation of section 13–11–4 of the Utah Code. Finally, Boud alleged that the photograph and accompanying language amounted to negligent misrepresentations made by Cruisers.

¶ 8 The district court heard arguments on Cruisers' motion for summary judgment and granted the motion on the ground that the materials in the brochure amounted to mere sales talk, or puffery, which could not give rise to an express warranty. The court further concluded that because the referenced portion of the brochure was not specific enough to create an express warranty, Boud's alternative arguments also failed. Boud appeals these rulings, and we have jurisdiction pursuant to Utah Code section 78–2–2(3)(j) (1996).

## ANALYSIS

### I. ISSUES PRESENTED/STANDARD OF REVIEW

¶ 9 On appeal, Boud claims that the district court erred in three respects. First, he argues that the district court erred in ruling that the photograph and caption in Cruisers' sales brochure did not amount to an express warranty. Second, he maintains that the district court should have found that Cruisers engaged in deceptive sales practices in violation of section 13–11–4 of the Utah Commercial Code. Finally, Boud contends that the district court incorrectly concluded that the photograph and caption did not constitute negligent misrepresentations.

■ ¶ 10 Three distinct principles govern the applicable standard of review in this case.

To begin with, when reviewing a grant of summary judgment by a trial court, "we review the court's legal decisions for correctness, giving no deference." *J.R. Simplot Co. v. Sales King Int'l*, 2000 UT 92, ¶ 13, 17 P.3d 1100 (Utah 2000). Second, summary judgment is appropriate where "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Utah R. Civ. P. 56(c). Finally, "an appellate court may affirm a 'judgment, order, or decree appealed from if it is sustainable on any legal ground or theory apparent on the record,' even though that ground or theory was not identified by the lower court as the basis of its ruling." *Orton v. Carter*, 970 P.2d 1254, 1260 (Utah 1998) (quoting *Limb v. Federated Milk Producers Ass'n*, 23 Utah 2d 222, 225 n. 2, 461 P.2d 290, 293 n. 2 (1969)).

### II. BOUD MAY NOT RELY ON THE PHOTOGRAPH AND CAPTION AS AN EXPRESS WARRANTY

¶ 11 The district court concluded that the photograph and caption contained in Cruisers' brochure did not provide an express warranty on which Boud could rely. We agree for two reasons.

### A. The Photograph and Accompanying Caption Did Not Create an Express Warranty

■ ¶ 12 The creation of express warranties by affirmation or promise is governed by section 70A–2–313 of the Utah Code, which adopts the Uniform Commercial Code's provisions governing express warranties. Subsection 70A–2–313(1)(a), which governs promotional materials, states that an "affirmation of fact or promise made by [a] seller ... [that] becomes part of the basis of [a] bargain creates an express warranty." Utah Code Ann. § 70A–2–313(1)(a) (1999). The next subsection places a limitation on this rule, however; it states that an "affirmation merely of the value of the goods or a statement purporting to be merely the *seller's opinion* or commendation of the goods does not create [an express] warranty."[1]

---

1. The text of Utah Code section 70A–2–313 reads,

(1) Express warranties by the seller are creat-

*Id.* § 70A–2–313(2) (emphasis added). Thus, the determination of whether an express warranty has been created ultimately hinges upon an examination of whether representations made by the seller were mere statements of opinion or were, rather, promises or affirmations of fact. In order to make this determination, we must examine the actual language and images set forth in Cruisers' brochure.

¶ 13 To qualify as an affirmation of fact, a statement must be objective in nature, i.e., verifiable or capable of being proven true or false.[2] Similarly, to be relied upon as a promise, a statement must be highly specific or definite. The photograph and caption contained in Cruisers' brochure are not objective or specific enough to qualify as either facts or promises; the statements made in the caption are merely opinions, and the photograph makes no additional assertions with regard to the problems of which Boud has complained.

¶ 14 Cruisers' brochure contains language characteristic of an opinion. Specifically, its assertions that the 3375 Esprit offers the "best performance" and "superb handling" rely on inherently subjective words. *See Royal Bus. Machs., Inc. v. Lorraine Corp.,* 633 F.2d 34, 42 (7th Cir.1980) ("General statements to the effect that goods are 'the best' ... are generally regarded as expressions of the seller's opinion or 'the puffing of his wares' and do not create an express warranty." (internal citations omitted)). While representations that a boat is "fastest in its class" or "most powerful in its class" could be objectively tested for their truth and could therefore qualify as affirmations of fact, an assertion that a boat is "best in its class" cannot. *See id.* The word "best" is a description that must ultimately be measured against some opinion or other imprecise standard, and "superb" is a near synonym subject to the same qualification. *Cf. Martin Rispens & Son v. Hall Farms, Inc.,* 621 N.E.2d 1078, 1083 (Ind.1993) ("[T]he statement 'top quality seeds' is a 'classic example of puffery.'" (citation omitted)). Similarly, "performance" is not a single quality, but rather embodies numerous qualities a boat may possess, and different people may place different weight on each individual quality.[3] Reasonable people could

---

**2.** At the district court's hearing on Cruisers' motion for summary judgment, counsel for Cruisers quoted *Hirschberg Optical Co. v. Dalton, Nye & Cannon Co.,* 7 Utah 433, 27 P. 83 (1891), for a definition of the term "puffing." The quoted section of that case reads as follows:

ed as follows:
> (a) Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise.
> (b) Any description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description.
> (c) Any sample or model which is made part of the basis of the bargain creates an express warranty that the whole of the goods shall conform to the sample or model.
> (2) It is not necessary to the creation of an express warranty that the seller use formal words such as "warrant" or "guarantee" or that he have a specific intention to make a warranty, but an affirmation merely of the value of the goods or a statement purporting to be merely the seller's opinion or commendation of the goods does not create a warranty.

Utah Code Ann. § 70A–2–313 (1999).

> The general praise of his own wares by a seller, commonly called "puffing," for the purpose of enhancing them in the buyer's estimation, has always been allowed; provided it is kept within reasonable bounds; that is, provided the praise is general, and the language is not the positive affirmation of a specific fact affecting the quality, so as to be an express warranty ...

*Id.* at 436, 27 P. 83 (internal quotation and citation omitted).

Thus, *Hirschberg Optical* set forth a test that distinguishes an express warranty from puffing on the basis of whether the seller's statements were specific or general. Under the Utah Commercial Code, which was adopted after *Hirschberg Optical* and governs this case, the dispositive test focuses on whether the statements qualify as fact or mere opinion. *See* Utah Code Ann. § 70A–2–313 (1999). Often, looking at the specificity of the statements will prove useful in applying this test. In the present case, however, objective measurability is the dispositive factor in distinguishing fact from opinion.

**3.** 3 Ronald A. Anderson, *Anderson on the Uniform Commercial Code,* § 2–313:114, at 86 (3d ed.1995), states as follows:

> The rule that the seller is bound by false representations as to the nature of the goods contained in advertising material which has be-

therefore disagree and legitimately argue that several different boats in a given class perform "best" based on personal preferences that would be impossible to discount or disprove. As such, it would be unreasonable as a matter of law for anyone to rely on such a statement as one of fact. Accordingly, the language contained in the caption at issue is a mere statement of opinion.

¶ 15 Moreover, because the photograph does not make any factual representations with respect to the problems Boud has alleged, it does not create an express warranty on which Boud could sustain his claims. While the photograph depicts a boat moving across a body of water, it makes no representations regarding mechanical or electrical systems; nor does it provide any representations as to quality or reliability.

¶ 16 Consequently, we agree with the district court that the brochure lacks the specificity necessary to have created an express warranty. The proper source of redress for the yacht's mechanical and electrical problems is the limited warranty.

B. *By Signing the Contract, Boud Disclaimed Any Express Warranty That Might Have Been Created and Agreed That the Contract Was an Integration of the Final Terms of the Parties' Agreement*

¶ 17 Even if we were to conclude that the photograph and caption created an express warranty, Boud disclaimed any express warranty that might have been created during the negotiation process by signing the written sales agreement. This court has held that "terms that might otherwise be considered a basis of the bargain are not express warranties if the final written contract effectively disclaims and/or excludes any such warranties." *Rawson v. Conover*, 2001 UT 24, ¶ 56, 20 P.3d 876 (Utah 2001).

¶ 18 The contract entered into between the parties included the following language di-

rectly above the signature line on which Boud signed:

> Purchaser agrees that his contract includes all of the terms, conditions and warranties on both the face and reverse side hereof, that this agreement cancels and supersedes any prior agreement and as of the date hereof comprises the complete and exclusive statement of the terms of the agreement relating to the subject matter covered hereby. PURCHASER BY HIS/HER EXECUTION OF THIS AGREEMENT ACKNOWLEDGES THAT HE/SHE HAS READ ITS TERMS, CONDITIONS AND WARRANTIES BOTH ON THE FACE AND THE REVERSE SIDE HEREOF AND A[SIC] HAS RECEIVED A TRUE COPY OF THIS AGREEMENT, AND FURTHER AGREES TO PAY THE 'BALANCE DUE' SET FORTH ABOVE ON OR BEFORE THE DATE SPECIFIED.

Further, the contract clearly stated the following in bold capital letters:

> **NO WARRANTIES, EXPRESS OR IMPLIED, ARE MADE OR WILL BE DEEMED TO HAVE BEEN MADE BY EITHER SELLER OR THE MANUFACTURER OF THE NEW MOTOR VEHICLE ... EXCEPTING ONLY THE CURRENT PRINTED WARRANTY ... WHICH WARRANTY IS INCORPORATED HEREIN AND ... A COPY OF WHICH WILL BE DELIVERED TO PURCHASER AT THE TIME OF DELIVERY ... AND THE REMEDIES SET FORTH IN SUCH WARRANTY WILL BE THE ONLY REMEDIES AVAILABLE.....**

¶ 19 Boud argues that he is not bound by this disclaimer because (1) evidence of prior terms should replace the limited warranty, (2) he signed the contract under duress, and (3) the contract was not accompanied by adequate consideration. We reject each of these arguments. We conclude that, by signing the sales contract, Boud certified

come a part of the inducement of the contract, is limited to representations of fact, and does not include mere statements of opinion as to the nature or quality of the property. It is especially important that this should be the

rule as to representations of the quality of goods sold, for there is nothing on which people are more apt to differ, and nothing on which they are less apt to trust each other.

that he accepted the limited warranty provision and disclaimed any prior express warranty that might have been created.[4]

### 1. The Parole Evidence Rule Precludes the Introduction of Contradictory Terms

¶ 20 To begin with, Boud's attacks on the validity of the sales contract fail because the parole evidence rule precludes a search for additional or contradictory terms outside of the four corners of a written contract absent some proof of fraud or mistake. *See Semenov v. Hill*, 1999 UT 58, ¶ 12, 982 P.2d 578 ("[T]he general rule pertaining to acceptance of an offer by signing is that 'where a person signs a document, he is not permitted to show that he did not know its terms, and in the absence of fraud or mistake he will be bound by all its provisions, even though he has not read the agreement and does not know its contents.' ") (quoting 17 C.J.S. *Contracts* § 41(f) (1963)).

¶ 21 No evidence of fraud or mistake has been presented in this case; Boud therefore cannot avoid the effect of the parol evidence rule nor claim that the parties agreed to any terms other than those included in the written contract.

### 2. Boud Did Not Sign the Contract Under Duress

¶ 22 Boud next alleges that he signed the sales contract under duress and was forced to pay for the yacht in advance of signing on the threat of being denied delivery. However, he conceded to the district court that he was not obligated to pay the full sales price up front, but chose to do so to ensure that he would be able to "lock in" the best price possible. This concession forecloses Boud's argument because the mere fact that he was motivated to sign the sales agreement in order to obtain a favorable price does not implicate duress under Utah law.

¶ 23 Under Utah law, duress exists when "a party's manifestation of assent is induced by an improper threat by the other party that leaves the victim no reasonable alternative." *Andreini v. Hultgren*, 860 P.2d 916, 921 (Utah 1993) (quoting Restatement (Second) of Contracts § 175(1) (1979)). Hence, two elements must be shown to exist in order to prove duress. First, there must be some improper threat made by the defendant. Second, that threat must leave the victim/plaintiff with no reasonable alternative but to consent to the contract. Neither element has been satisfied here.

#### a. Improper Threat

¶ 24 To begin with, none of the alternative definitions of "improper threat" set forth in the Restatement (Second) of Contracts apply.[5] Indeed, the only facts that Boud has set forth with regard to any type of threat made by Cruisers or Wasatch Marine are that delivery was conditioned upon the signing of the contract and that the price might be subject to change over time. Because delivery conditioned upon ratification of a contract and the requirement of a deposit are ordinary, nonthreatening contractual terms, we conclude that section 176 of the

---

4. This conclusion is supported by Anderson's treatise on the Uniform Commercial Code, which explains as follows:

> A contract may exclude any express warranty not included in the contract.... As far as the code is concerned, no question arises as to the validity of a disclaimer of express warranties. The Code does not require that the seller make any express warranty, and therefore the Code is not concerned with the fact that the seller and the buyer agree that there are no express warranties. As an express warranty only applies when it is the intent of the parties that it should do so, it is apparent that a disclaimer merely makes it clear that the parties did not intend to make an express warranty.

Anderson, *supra*, § 2-313:290–91, at 177–78 (citation omitted).

5. See Restatement (Second) of Contracts § 176(2) (1981), which states as follows:

> (2) A threat is improper if the resulting exchange is not on fair terms, and
> (a) the threatened act would harm the recipient and would not significantly benefit the party making the threat,
> (b) the effectiveness of the threat in inducing the manifestation of assent is significantly increased by prior unfair dealing by the party making the threat, or
> (c) what is threatened is otherwise a use of power for illegitimate ends.

Restatement (Second) of Contracts is not implicated.[6]

### b. No Reasonable Alternative

¶ 25 With respect to the second element of duress, we held in *Heglar Ranch, Inc. v. Stillman*, 619 P.2d 1390 (Utah 1980), that the mere loss of a potential bargain does not leave a plaintiff with "no reasonable alternative." Specifically, we stated that

> [t]o label as "duress" such incentive to complete the transaction would have the effect of permitting any party to avoid a contractual obligation on the ground that performance was agreed to only because, in the absence of such a promise, the party would be denied the benefit of a bargain. Such a defense is entirely foreign to the established law of contracts.

*Id.* at 1392.

¶ 26 Because Boud has failed to show that he was subjected to an improper threat or that he was left with "no reasonable alternative," his duress argument fails.

### 3. The Contract was Accompanied by Adequate Consideration

¶ 27 Boud's final argument that the contractual disclaimer should be voided rests on the ground that he did not receive adequate consideration in exchange for signing it. This argument is without merit. Upon signing the contract, Boud became entitled to delivery of the yacht and coverage under the limited warranty, and he later availed himself of that warranty to secure repairs. The contract was therefore supported by consideration. Accordingly, the written contract must be given full effect, and that contract effectively disclaims any prior express war-

ranties that might have existed and supersedes any contrary assurances that may have been made during negotiations between the parties.

### III. BECAUSE THE PHOTOGRAPH AND CAPTION FAIL TO CREATE AN EXPRESS WARRANTY, THEY DO NOT CONSTITUTE MATERIAL REPRESENTATIONS THAT WOULD IMPLICATE DECEPTIVE SALES PRACTICES OR NEGLIGENT MISREPRESENTATIONS.

¶ 28 With respect to his assertions that Cruisers engaged in deceptive sales practices and made negligent misrepresentations, Boud has conceded in this appeal as well as to the district court that the validity of all three of his arguments hinges on his claim that the language and photograph in the brochure were specific enough to create an express warranty. Because we have determined that the photograph and caption did not create an express warranty, Boud's alternative arguments fail as a result of his concession.[7] We therefore affirm the district court's decision to grant summary judgment in favor of Cruisers.

### CONCLUSION

¶ 29 We conclude that the photograph and caption contained in Cruisers' sales brochure were mere statements of opinion and did not create an express warranty. Moreover, even if they did, because Boud signed the written sales contract and thereby accepted the limited warranty associated with it, he expressly disclaimed any prior express warranty. Finally, because Boud has conceded that his

---

6. This conclusion is consistent with the rationale behind section 176. Indeed, under the heading "Rationale," the first comment to that section explains,

> An ordinary offer to make a contract commonly involves an implied threat by one party, the offeror, not to make the contract unless his terms are accepted by the other party, the offeree. Such threats are an accepted part of the bargaining process. A threat does not amount to duress unless it is so improper as to amount to an abuse of that process....

Restatement (Second) of Contracts § 176 cmt. a (1981).

7. Because we base our conclusion regarding Boud's alternative arguments on Boud's concession that his alternative claims fail if the brochure did not create an express warranty, we do not reach the issues of whether deceptive sales practices and negligent misrepresentation claims can exist in the absence of an express warranty or whether a signed disclaimer such as the one contained in this contract is sufficient to preclude deceptive sales practices or negligent misrepresentation claims.

alternative arguments depend upon his claim that the brochure created an express warranty, we hold that his causes of action for deceptive sales practices under the Utah Consumer Sales Practices Act and negligent misrepresentation also fail. For all these reasons, the decision of the district court is affirmed.

¶ 30 Chief Justice DURHAM, Justice HOWE, Justice RUSSON, and Justice WILKINS concur in Associate Chief Justice DURRANT's opinion.