63 P.3d 607 (2002)
2002 UT 127
STATE of Utah in the interest of W.A., a child under eighteen years of age.
D.A., Appellant,
v.
State of Utah, Appellee.
No. 20010081.
Supreme Court of Utah.
December 20, 2002.
*610 Mark L. Shurtleff, Att'y Gen., Carol L.C. Verdoia, Asst. Att'y Gen., Salt Lake City, for petitioner.
Martha Pierce, Salt Lake City, Guardian Ad Litem.
Jim C. Shirley, Salt Lake City, for respondent.

On Certification from the Utah Court of Appeals
DURRANT, Associate Chief Justice:
¶ 1 This appeal concerns the termination of parental rights. The State of Utah and W.A., acting through a guardian ad litem, filed a motion to terminate the rights of both of W.A.'s parents. A juvenile court granted this joint motion, reasoning that the parents were unfit and had abandoned W.A. On appeal, W.A.'s mother presents four main arguments. First, she claims that the juvenile court lacked personal jurisdiction over her under both Utah and federal law. Second, she argues that the juvenile court incorrectly admitted evidence of a conviction obtained by a nolo contendere plea. Third, she contends that the juvenile court incorrectly admitted evidence of a juvenile court adjudication. Finally, she asserts that the juvenile court erred in denying her motion to amend the termination order. We affirm.

BACKGROUND
¶ 2 W.A., a juvenile, is the biological son of D.A. and E.A. In December 1993, the State of Oklahoma filed felony charges against both his mother, D.A., and his father, E.A. Thereafter, a Kentucky court granted temporary custody and guardianship of W.A. to his sister, D.D.
¶ 3 On July 2, 1996, D.A. pleaded nolo contendere to sexually abusing a minor child and was sentenced by an Oklahoma court to ten years in prison. That same day, E.A. pleaded nolo contendere to lewd molestation of a child and sexual abuse of a minor. As a result of this plea, an Oklahoma court sentenced E.A. to a term of twenty years for the first charge and a term of life imprisonment for the second.
¶ 4 Sometime between 1995 and 1998, D.D. moved to Utah with W.A. In February of 1998, D.D. contacted the Division of Child and Family Services ("the State") and informed it that she could no longer care for W.A. The State then filed a dependency petition regarding W.A. A juvenile court adjudicated W.A. a dependent child on February 25, 1998, and it awarded the State temporary custody and guardianship.
¶ 5 On October 8, 1998, the State and W.A.'s guardian ad litem filed a motion to terminate D.A.'s and E.A.'s parental rights. Both parents moved to dismiss, reasoning that Utah's long-arm statute, see Utah Code Ann. § 78-27-24 (2002), did not afford the juvenile court personal jurisdiction over them, and even if it did, such an assertion of jurisdiction violated the due process requirements of the Fourteenth Amendment. The juvenile court disagreed, concluding that the parents had sufficient contacts with the State of Utah to allow it to exercise personal jurisdiction under subsections 78-27-24(3) and (6) of the Utah Code. Alternatively, the court reasoned that it had personal jurisdiction over the parents under the status exception because a parental termination proceeding involves the "status" of a child vis-a-vis its parents.
¶ 6 Following a trial, the juvenile court terminated the parental rights of both D.A. and E.A., concluding that they were unfit under sections 78-3a-407(3), -408(2)(e), and -408(4)(a) of the Utah Code, and had abandoned W.A. pursuant to sections 78-3a-407(1) and -408(1)(c) of the Utah Code.[1] D.A. appealed,[2] and the Utah Court of Appeals certified her appeal to us pursuant to rule 43 *611 of the Utah Rules of Appellate Procedure. We have jurisdiction under Utah Code Ann. § 78-2-2(3)(b) (2002).
¶ 7 On appeal, D.A. argues that the juvenile court erred in four respects. First, she claims that the juvenile court incorrectly concluded that it had personal jurisdiction over her. Second, she argues that the juvenile court improperly admitted into evidence her Oklahoma conviction because it was obtained through a nolo contendere plea. Third, she contends that the juvenile court incorrectly admitted into evidence the February 25, 1998, adjudication order because it violated her constitutional right to confront her accusers. Finally, she asserts that the juvenile court erred in denying her motion to amend its termination order because (1) there was insufficient evidence to support the court's findings under sections 78-3a-407(1), -408(1)(c), and -408(2)(e) of the Utah Code, (2) the court improperly used her sexual abuse conviction to reach its conclusion under 78-3a-408(4)(a) of the Utah Code, and (3) subsection 78-3a-408(2)(e) of the Utah Code is unconstitutional.

ANALYSIS

I. STANDARD OF REVIEW
¶ 8 When reviewing a termination petition, "we will disturb the findings and conclusions of the juvenile court only if the evidence clearly preponderates against the findings as made or the court has abused its discretion." In re S.R., 735 P.2d 53, 56 (Utah 1987). Whether a court has personal jurisdiction over a defendant under Utah law and the Fourteenth Amendment of the United States Constitution is a question of law, which we review for correctness, State Dep't of Soc. Serv. v. Vijil, 784 P.2d 1130, 1132 (Utah 1989), though we will review the trial court's underlying findings of fact using the "clearly erroneous" standard, see Kamdar & Co. v. Laray Co., 815 P.2d 245, 248 (Utah Ct.App.1991). A similar standard of review applies in determining whether evidence is admissible under rules 410 and 803 of the Utah Rules of Evidence. See Cal Wadsworth Constr. v. City of St. George, 898 P.2d 1372, 1378 (Utah 1995) ("The issue of whether evidence is admissible is a question of law, which we review for correctness, incorporating a clearly erroneous standard of review for subsidiary factual determinations." (internal quotations and citation omitted)); see also State v. Martin, 2002 UT 34, ¶ 29, 44 P.3d 805 ("The question of whether evidence is admissible can be either a question of discretion, [reviewed under an] abuse of discretion [standard], or a question of law, which we review for correctness.").
¶ 9 Where our review "requires us to examine statutory language, we look first to the plain meaning of the statute." Young v. Salt Lake City Sch. Dist., 2002 UT 64, ¶ 10, 52 P.3d 1230. Moreover, we "may affirm a judgment, order, or decree appealed from if it is sustainable on any legal ground or theory apparent on the record, even though that ground or theory was not identified by the lower court as the basis of its ruling." Boud v. SDNCO, Inc., 2002 UT 83, ¶ 10, 54 P.3d 1131 (internal quotations and citation omitted).

II. PERSONAL JURISDICTION
¶ 10 D.A. first challenges the juvenile court's conclusion that it had jurisdiction to terminate her parental rights. In particular, she asserts that Utah law did not afford the court personal jurisdiction over her as a nonresident defendant, and even if it did, the due process requirements of the Fourteenth Amendment of the United States Constitution barred the court from exercising personal jurisdiction over her. We disagree.

A. Utah Law
¶ 11 We have applied various tests in determining whether personal jurisdiction exists over a nonresident defendant. The test utilized most frequently asks (1) "whether Utah's long-arm statute encompasses the acts alleged in the complaint," and (2) whether exercising "personal jurisdiction over [the nonresident] defendant[] comports with the due process requirements of the Fourteenth Amendment of the United States Constitution." Starways, Inc. v. Curry, 1999 UT 50, ¶ 6, 980 P.2d 204.
*612 ¶ 12 In other cases, however, we have stated that a three-pronged test should be used to determine whether a court has personal jurisdiction. For example, in Phone Directories Co. v. Henderson, 2000 UT 64, ¶ 12, 8 P.3d 256, we stated that
[u]nder Utah law, a three-part inquiry is used to determine ... personal jurisdiction: (1) the defendant's acts or contacts must implicate Utah under the Utah long-arm statute; (2) a "nexus" must exist between the plaintiff's claims and the defendant's acts or contacts; and (3) application of the Utah long-arm statute must satisfy the requirements of federal due process.
¶ 13 We have even opined that whether personal jurisdiction exists over a nonresident defendant depends exclusively on the requirements of the Fourteenth Amendment because "any set of circumstances that satisfies due process will also satisfy [Utah's] long-arm statute." SII MegaDiamond, Inc. v. Am. Superabrasives Corp., 969 P.2d 430, 433 (Utah 1998); see also Arguello v. Indus. Woodworking Mach. Co., 838 P.2d 1120, 1122 (Utah 1992) (assuming Utah's long-arm statute would also be satisfied if exercising personal jurisdiction over the nonresident defendant satisfies due process); Synergetics v. Marathon Ranching Co., 701 P.2d 1106, 1110 (Utah 1985) (stating that the reach of Utah's long-arm statute "must be extended to the fullest extent allowed by due process of law").
¶ 14 We now clarify the law regarding this issue. The proper test to be applied in determining whether personal jurisdiction exists over a nonresident defendant involves two considerations. First, the court must assess whether Utah law confers personal jurisdiction over the nonresident defendant. This means that a court may rely on any Utah statute affording it personal jurisdiction, not just Utah's long-arm statute. Second, assuming Utah law confers personal jurisdiction over the nonresident defendant, the court must assess whether an assertion of jurisdiction comports with the due process requirements of the Fourteenth Amendment.
¶ 15 This test is merely a refinement of our previous tests governing the assertion of personal jurisdiction. It recognizes that the legislature may provide for the extension of personal jurisdiction over an individual in statutes other than the long-arm statute. There is nothing talismanic about the long-arm statute. While maintaining a single list of the state's jurisdictional reach may be more efficient, no reason exists to limit the legislature's authority to enact extensions of personal jurisdiction in other sections of the code.
¶ 16 Under this new test, however, any legislative enactment of personal jurisdiction, in or out of the long-arm statute, cannot justify on its own the assertion of jurisdiction. The true safeguard on the extension of personal jurisdiction is the constitutional due process analysis, with its focus on minimum contacts and on traditional notions of fair play and substantial justice. Therefore, this test recognizes the legislature's authority to provide for the extension of personal jurisdiction as limited by established constitutional due process requirements.
¶ 17 In the instant action, the juvenile court concluded that it had personal jurisdiction over D.A. pursuant to subsections 78-27-24(3) and (6) of Utah's long-arm statute. Although this is arguably correct, we find it unnecessary to reach the issue because another statute governing the termination of parental rights is directly on point. Subsection 78-3a-110(13) of the Utah Code deals explicitly with a juvenile court's jurisdiction over a nonresident parent. It declares that "[i]f the parents, parent, or guardian ... cannot be found within the state, the fact of their minor's presence within the state shall confer jurisdiction on the court in proceedings in minor's cases under this chapter as to any absent parent or guardian, provided that due notice has been given."[3] Utah Code Ann. § 78-3a-110(13) *613 (2002). Notification to the parent "vest[s] the court with jurisdiction over the parent or guardian ... to the same extent as if the person ... was served personally within the state." § 78-3a-110(13)(c). Hence, according to its plain language, subsection 78-3a-110(13) confers personal jurisdiction over a nonresident parent if (1) that parent receives notification of the parental termination proceeding, and (2) his or her child resides in the state at the time the proceeding commences.[4]
¶ 18 Here, it is clear that D.A. received actual notice of the parental termination proceeding because she opposed the juvenile court's authority to terminate her parental rights throughout the proceeding. Moreover, it is undisputed that W.A. lived in the State of Utah at the time the proceeding was initiated. The juvenile court therefore had authority to exercise personal jurisdiction over D.A. pursuant to subsection 78-3a-110(13) of the Utah Code.

B. Due Process Requirements of the Fourteenth Amendment
¶ 19 Despite our conclusion that Utah law confers personal jurisdiction over D.A., federal law nevertheless mandates that we consider whether exercising jurisdiction over her comports with the due process requirements of the Fourteenth Amendment. The juvenile court concluded that asserting jurisdiction over D.A. did not run afoul of the Fourteenth Amendment because she had sufficient contacts with the State of Utah. The court further concluded that even if D.A. lacked the requisite degree of contact, asserting personal jurisdiction over her was sustainable under the status exception on the ground that parental termination proceedings involve the adjudication of a child's "status" vis-a-vis its parents. We address the juvenile court's latter conclusion and affirm.[5]
¶ 20 The United States Supreme Court has explained that the Due Process Clause of the Fourteenth Amendment to the United States Constitution permits a court to assert personal jurisdiction over a nonresident defendant where that defendant has "certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." Int'l Shoe Co. v. Washington, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945) (internal quotations and citation omitted). An exception to this minimum contacts requirement exists, however. Indeed, the Supreme Court observed more than a century ago that cases involving the status of a plaintiff are unique and can be pursued in the plaintiff's home state even if that judicial forum does not have personal jurisdiction over the defendant. Pennoyer v. Neff, 95 U.S. 714, 734-35, 24 L.Ed. 565 (1877). In particular, the Court in Pennoyer stated the following:
To prevent any misapplication of the views expressed in this opinion [regarding the Fourteenth Amendment], it is proper to observe that we do not mean to assert, by any thing we have said, that a state may not authorize proceedings to determine the status of one of its citizens towards a non-resident, which would be binding within the State, though made without service of process or personal notice to the non-resident. The jurisdiction which every State possesses to determine the civil status and capacities of all its inhabitants involves authority to prescribe the conditions on which proceedings affecting them may be commenced and carried on [in] its territory.
Id. at 734 (emphasis added).
¶ 21 The Supreme Court reaffirmed the existence of the status exception in Shaffer v. *614 Heitner, 433 U.S. 186, 97 S.Ct. 2569, 53 L.Ed.2d 683 (1977). There, the Court explained that "Pennoyer itself recognized ... that cases involving the personal status of the plaintiff, such as divorce actions, could be adjudicated in the plaintiff's home State" despite the defendant's absence from the state. Id. at 201, 97 S.Ct. 2569. Importantly, the Court also noted that although an assertion of personal jurisdiction must ordinarily comply with the standard set forth in International Shoe, nothing in the Fourteenth Amendment "suggest[s] that jurisdictional doctrines ..., such as the particularized rules governing adjudications of status, are inconsistent with the standard of fairness." Id. at 208 n. 30, 97 S.Ct. 2569 (citing Roger J. Traynor, Is This Conflict Really Necessary?, 37 Tex. L.Rev. 657, 660-61 (1959)).[6] Thus, the Court has acknowledged that the status exception comports with due process requirements when properly applied even though the defendant lacks minimum contacts with the forum.
¶ 22 Given that the United States Supreme Court has consistently recognized that certain types of cases involving status may not offend the Fourteenth Amendment, we must decide whether the status exception extends to parental termination proceedings. We conclude that it does for three reasons. First, parental termination proceedings clearly involve the determination of a child's status vis-a-vis its parents. See In re Interest of M.L.K., 13 Kan.App.2d 251, 768 P.2d 316, 319 (1989) (holding that the status exception extends to termination proceedings because the "[t]ermination of parental rights is nothing more than a determination of the legal status between the natural parent and the child"); In re M.S.B., 611 S.W.2d 704, 706 (Tex.Civ.App.1980) (declaring that "[i]t cannot be doubted that the parent-child relationship creates a status, and that a suit seeking to terminate such relationship is a status adjudication"). Second, such proceedings are "analogous to [a] court's termination of the marriage relationship between a husband and wife," In re Interest of M.L.K., 768 P.2d at 319, and the Supreme Court has determined that the status exception applies to divorce proceedings, see Shaffer, 433 U.S. at 208 n. 30, 97 S.Ct. 2569 (citing Traynor, supra, at 660-61); Pennoyer, 95 U.S. at 734-35. Finally, although there is some authority to the contrary,[7] the majority of jurisdictions addressing the issue have concluded that the status exception extends to parental termination proceedings. See In re Appeal in Maricopa County, Juvenile Action No. JS-734, 25 Ariz.App. 333, 543 P.2d 454, 459-60 (1975); In re Interest of M.L.K., 768 P.2d at 319-20; In re J.J.C., No. E2000-01223-COA-R3-CV, 2001 WL 256161, at *1-2, 2001 Tenn.App. Lexis 171, at *3-5 (Tenn.Ct.App. Mar.15, 2001); Graham v. Copeland (In re Adoption of Copeland), 43 S.W.3d 483, 487 (Tenn.Ct.App.2000) (relying on status exception in parental rights termination proceeding *615 against a father in prison); In re M.S.B., 611 S.W.2d at 706. Cf. Wenz v. Schwartze, 183 Mont. 166, 598 P.2d 1086, 1091-92 (1979) (concluding personal jurisdiction over a parent is not necessary in order to terminate parental rights, without specifically discussing status exception), cert. denied, 444 U.S. 1071, 100 S.Ct. 1015, 62 L.Ed.2d 753 (1980); In re A.E.H., 161 Wis.2d 277, 468 N.W.2d 190, 198-200, (focusing on child's contacts with the state in order to terminate parental rights), cert. denied, 502 U.S. 925, 112 S.Ct. 338, 116 L.Ed.2d 278 (1991).
¶ 23 Likewise, we note that the majority of jurisdictions that have addressed whether the status exception applies in the similar situation of child custody determinations have concluded that it does. See People ex rel. Wyoming v. Stout, 969 P.2d 819, 821 (Colo.Ct.App.1998); Balestrieri v. Maliska, 622 So.2d 561, 563 & n. 1 (Fla.Dist.Ct.App. 1993) (citing cases from fourteen other states applying the status exception in child custody cases); Bartsch v. Bartsch, 636 N.W.2d 3, 6-7 (Iowa 2001); Joliff v. Joliff, 829 P.2d 34, 36 n. 5 (Okla.1992); In re S.A.V., 837 S.W.2d 80, 84 (Tex.1992). Hence, there is persuasive authority to extend the status exception to parental termination proceedings.
¶ 24 Despite opportunities to clarify the status exception's application to parent-child relationships,[8] the United States Supreme Court has not yet directly addressed the status exception as it applies to termination of parental rights. Contrary to D.A.'s arguments, our decision to extend the status exception to parental termination proceedings is consistent with the Court's decision in May v. Anderson, 345 U.S. 528, 73 S.Ct. 840, 97 L.Ed. 1221 (1953). In that case, the Court addressed whether the Full Faith and Credit Clause of the United States Constitution required Ohio to enforce a child custody decree rendered in Wisconsin even though the Wisconsin court lacked personal jurisdiction over the defendant mother when it issued the decree. A majority of the Court concluded that the Full Faith and Credit Clause did not require Ohio to accept the disposition made in Wisconsin. Id. at 528-29, 535, 73 S.Ct. 840.
¶ 25 In reaching that conclusion, four justices within the majority reasoned that it was "unnecessary to determine the children's legal domicile because, even if it be with their father [in Wisconsin], that does not give Wisconsin, certainly as against Ohio, the personal jurisdiction that it must have in order to deprive their mother of her personal right to [custody]." Id. at 534, 73 S.Ct. 840. D.A. insists that this statement in May, namely, that a child's domicile is insufficient to confer personal jurisdiction over a nonresident parent, precludes us from extending the status exception to termination proceedings. We find this contention without merit.
¶ 26 In our view, the statement on which D.A. relies is not controlling legal authority because May did not decide whether a child's domicile could confer personal jurisdiction over a nonresident parent. Indeed, although four justices in May agreed that the question to be decided was "whether a court of a state, where a mother is neither domiciled, resident nor present, [could] cut off her immediate right to the care, custody, management and companionship of her minor children without having jurisdiction over her in personam," id. at 533, 73 S.Ct. 840, Justice Frankfurter's concurring opinion, which constituted the fifth and final vote in favor of reversal, significantly narrowed the question addressed by the Court. Specifically, his concurring opinion stated that *616 the only thing the Court decides ... is that the Full Faith and Credit Clause does not require Ohio, in disposing of the custody of children in Ohio, ... to accept ... the [custody] disposition made by Wisconsin [over the mother]. The Ohio Supreme Court felt itself so bound. This Court does not decide that Ohio would be precluded from recognizing, as a matter of local law, the disposition made by the Wisconsin court. For Ohio to give respect to the Wisconsin decree would not offend the Due Process Clause.
Id., at 535-36, 73 S.Ct. 840 (Frankfurter, J., concurring) (emphasis added). Accordingly, Justice Frankfurter's concurrence establishes the parameters of May. See McAtee v. McAtee, 174 W.Va. 129, 323 S.E.2d 611, 616 (1984) ("Justice Frankfurter's concurring opinion ... is widely acknowledged as having set forth the better view and May . . . has been interpreted in accord with that concurrence."); see also Fernandez v. Fernandez, App. No. 85-104-II, 1986 Tenn.App. Lexis 3586, at *3 (Tenn.Ct.App. July 15, 1986) (concluding that "it is widely acknowledged that Mr. Justice Frankfurter's concurring opinion permitting states to recognize foreign custody decrees rendered without personal jurisdiction over an absent parent is the better rule of law"); Hudson v. Hudson, 35 Wash. App. 822, 670 P.2d 287, 294 (1983) (declaring that "May has been interpreted in accord with Justice Frankfurter's concurring opinion"). Since Justice Frankfurter's concurrence establishes the parameters of May, the plurality's statement regarding personal jurisdiction over a nonresident parent is mere dicta.
¶ 27 Moreover, no other jurisdiction has found May dispositive when addressing whether the status exception applies to parental termination proceedings. To the contrary, our research reveals that jurisdictions that have had occasion to address May's effect on such proceedings have uniformly rejected its applicability. For example, in In re Appeal in Maricopa County, the Arizona Court of Appeals distinguished May on the ground that May dealt with a custody proceeding, rather than a parental termination proceeding, and held that personal jurisdiction was not required over the nonresident parent because "the relationship of parent and child is a status in which the state has a preeminent interest."[9] 543 P.2d at 459; see also In re J.J.C., at *1-2, 2001 Tenn.App. Lexis 171 at *3-5 (distinguishing May and concluding that the status exception extended to parental termination proceedings). Thus, contrary to D.A.'s assertion, May does not preclude the juvenile court from asserting personal jurisdiction over her.
¶ 28 Since we conclude that the status exception extends to parental termination proceedings, it is irrelevant whether D.A. had minimum contacts with the state. Nevertheless, we must still determine if exercising jurisdiction in this case otherwise meets the due process requirements of the Fourteenth Amendment. We conclude that it does for the reasons that follow.
¶ 29 First, it is clear that the interests of this state are paramount to the interests of any other state. W.A. is present in this state and "all relevant information concerning [his] welfare, progress, needs, and potential adoptive family" are easily accessible here. E.A., 2002 UT App 72 at ¶ 54, (Bench, J., dissenting). This state has been financially, emotionally, and physically supporting W.A. since he was adjudicated a dependant child in February 1998. Additionally, our legislature has affirmatively expressed its interest in having Utah courts determine the interests of children located in Utah. See Utah Code Ann. § 78-3a-110(13). Perhaps most importantly, we are concerned that if we refuse to exercise authority over D.A., no other state would be able to assert jurisdiction to resolve W.A.'s status. Therefore, because this state clearly has an interest in the outcome of this case paramount to that of any other state, it is only appropriate for the termination of parental rights to occur in Utah.
¶ 30 Second, we note that statutory provisions amply protected D.A.'s rights in this *617 case. Indeed, she has benefitted significantly from procedural protections provided by Utah's statutes protecting her Fourteenth Amendment due process rights. As previously mentioned, the statute authorizing jurisdiction provides for, and D.A. actually received, notice of the proceeding. See id. Additionally, due to other statutory provisions, she was appointed counsel and given an opportunity to present evidence, to summon witnesses, to have her rights fully and carefully considered by the juvenile court, and to appeal the decisions of that court within thirty days. See Utah Code Ann. §§ 78-3a-110, -406, -909, -913 (2002). These procedural protections, along with the notice she received, provided more than adequate safeguards to preserve D.A.'s Fourteenth Amendment due process rights.
¶ 31 The fact that parental rights have been designated "fundamental liberty interest[s]," Santosky II v. Kramer, 455 U.S. 745, 758-59, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982), does not alter our analysis. Cases dealing with status often involve a fundamental liberty interest. Nevertheless, the United States Supreme Court has allowed courts to exercise jurisdiction in such cases where standards of fairness are not violated. For instance, notwithstanding the fact that the right to marry has been deemed of "fundamental importance," Zablocki v. Redhail, 434 U.S. 374, 384, 98 S.Ct. 673, 54 L.Ed.2d 618 (1978), the Supreme Court in Shaffer still recognized it is appropriate for a state to exercise jurisdiction over a non-resident defendant for purposes of terminating a marriage, see 433 U.S. at 208 n. 30, 97 S.Ct. 2569 (citing Traynor, supra, at 660-61). D.A.'s rights have been given due consideration. Indeed, the interests of D.A., along with the interests of W.A. and the state, have been given the consideration required by the Termination of Parental Rights Act which expressly states that it was "designed to safeguard the rights and interests of all parties concerned and promote their welfare and that of the state." Utah Code Ann. § 78-3a-402(1) (2002) (emphasis added). However, because courts are mandated to make determinations in the best interest of the child when grounds exist for parental termination, the rights of the child attain importance paramount to the rights of the parent. See Utah Code Ann. § 78-3a-402(2). Thus, even though parental rights are a fundamental liberty interest, given the facts of this case, exercising jurisdiction over D.A. is justified.
¶ 32 After considering these several factors, we conclude that Fourteenth Amendment due process concerns have been met. Accordingly, we hold that the juvenile court's assertion of personal jurisdiction over D.A. comports with the due process requirements of the Fourteenth Amendment.

III. NOLO CONTENDERE PLEA
¶ 33 Having concluded that the juvenile court had personal jurisdiction over D.A., we next consider whether it correctly admitted as evidence, under Utah Rules of Evidence 803(8) and 803(22), her sexual abuse conviction resulting from a plea of nolo contendere. D.A. contends that Utah Rules of Evidence 410(2) and 803(22) bar admission of such a conviction. We disagree.

A. Utah Rule of Evidence 410(2)
¶ 34 Utah Rule of Evidence 410(2) provides that evidence of "a plea of nolo contendere" is not admissible "in any civil or criminal proceeding ... against the defendant who made the plea." Utah R. Evid. 410(2). Because the State did not offer D.A.'s sexual abuse conviction to prove that she had actually committed sexual abuse, we conclude that rule 410(2) does not bar the admissibility of her conviction.
¶ 35 In reaching this conclusion, we adopt the First Circuit's reasoning in Olsen v. Correiro, 189 F.3d 52 (1st Cir.1999). In that case, defendants tried to introduce plaintiff Olsen's manslaughter conviction, which resulted from a nolo contendere plea, as an affirmative defense against Olsen's wrongful imprisonment suit. Id. at 55-56. Olsen objected to the admission of this evidence, arguing that rule 410 of the Federal Rules of Evidence barred it.[10]Id. at 58. The First *618 Circuit admitted the evidence, however, reasoning that the manslaughter conviction was not offered "to prove that Olsen actually committed manslaughter, or to suggest that he was actually guilty of a criminal act ... [but] to counter Olsen's claim for incarceration-based damages by showing that he was incarcerated for something other than the murder conviction." Id. at 61.
¶ 36 Applying the reasoning of Olsen to the instant case, we note that the State sought to introduce D.A.'s conviction to show that she had been sentenced to ten years in prison, not to prove that she had actually committed the crime for which she entered the nolo plea.[11] We therefore hold that Utah Rule of Evidence 410 does not bar the admission of D.A.'s sexual abuse conviction.[12]

B. Utah Rule of Evidence 803(22)
¶ 37 We next address D.A.'s assertion that Utah Rule of Evidence 803(22) bars the admission of her sexual abuse conviction. In relevant part, that rule provides that "[e]vidence of a final judgment, entered after a trial or upon a plea of guilty (but not upon a plea of nolo contendere), adjudging a person guilty of a crime punishable by death or imprisonment in excess of one year, to prove any fact essential to sustain the judgment" is admissible hearsay. Utah R. Evid. 803(22). Thus, according to the plain language of rule 803(22), certain types of final judgments are admissible, but not final judgments resulting from nolo pleas. The juvenile court therefore erred in concluding that D.A.'s sexual abuse conviction was admissible on that ground.
¶ 38 Nevertheless, rule 803(22) does not bar the admission of such convictions pursuant to other evidentiary rules. Indeed, in construing the import of Federal Rule of Evidence 803(22), which is identical to the rule we are analyzing, the First Circuit in Olsen explained that
it is not obvious that Rule 803(22) can be interpreted to bar any evidence; the rule merely says that certain evidence of judgments is not barred by the hearsay rule and that this exception does not apply to judgments entered upon a nolo plea. Evidence of a final judgment that does not fall within this exception to the hearsay rule could still be admissible ... because it falls within some other hearsay exception.

Olsen, 189 F.3d at 62 (emphasis added). Because evidence that is inadmissible under 803(22) may still be admissible on the ground that it falls under another hearsay exception, we hold that rule 803(22) does not affirmatively bar admission of D.A.'s sexual abuse conviction.

C. Utah Rule of Evidence 803(8)
¶ 39 Given that rules 410(2) and 803(22) do not affirmatively bar the admission of D.A.'s conviction, we next consider whether the juvenile court correctly admitted the evidence pursuant to Utah Rule of Evidence 803(8). As an exception to the hearsay *619 rule, rule 803(8) allows the admission of "[r]ecords, reports, statements, or data compilations, in any form, of public offices or agencies" that set forth "the activities of the office or agency." Utah R. Evid. 803(8). A judgment rendered by a court of this state falls within this hearsay exception if it is "offered to show the fact of conviction rather than underlying guilt." Olsen, 189 F.3d at 63 (citation omitted);[13]see also Utah Code Ann. § 78-25-3 (2002); Price v. Turner, 28 Utah 2d 328, 330-31, 502 P.2d 121, 123 (1972); cf. State v. Triptow, 770 P.2d 146, 146-47 (Utah 1989) (noting that evidence of prior felony convictions was admitted by the district court under rule 803(8)). Because the State sought to introduce D.A.'s conviction to show that she had been sentenced to ten years in prison, not to prove that she had actually committed sexual abuse, the hearsay exception set forth in rule 803(8) of the Utah Rules of Evidence applies to the instant action. Accordingly, we hold that the juvenile court correctly admitted D.A.'s sexual abuse conviction.

IV. ADMISSIBILITY OF THE FEBRUARY 25, 1998, ADJUDICATION ORDER
¶ 40 We now address whether the juvenile court acted correctly in taking judicial notice of its February 25, 1998, adjudication order declaring W.A. a dependent and placing him in the State's custody. D.A. contends that taking judicial notice of this adjudication order violated her due process rights because she did not have the opportunity to confront the witnesses that testified at the adjudication proceeding. We disagree.
¶ 41 D.A.'s contention is without merit because she stipulated that the State had custody of W.A. and the adjudication order was admitted exclusively for that purpose. Indeed, at trial, the following conversation occurred:
MS. NAGLE [The State's attorney]: Well, essentially, your Honor, the purpose of offering [the adjudication order] is to show that [W.A.] has been in the custody of the State since February 25, 1998.
MR. SHIRLEY [D.A.'s attorney]: And we'll stipulate to that fact, so the document's irrelevant.
THE [JUVENILE] COURT: Well, the Court's not going to put a limitation on its own findings.... [T]he Court will receive [the adjudication order] and it will stand by itself as a finding by the court as it relates to the child, [W.A.].
Therefore, whether the juvenile court denied D.A. her right to confront her accusers by taking judicial notice of the February 25, 1998, adjudication order is irrelevant because D.A. stipulated to the sole fact for which the adjudication order was submitted.[14] We conclude that the trial court committed no error because D.A.'s stipulation to the only fact that the State sought to prove by the admission of the adjudication order nullified any harm that may have resulted from the admission.

V. MOTION TO AMEND THE JUDGMENT
¶ 42 D.A. next contends that the juvenile court erred in denying her motion to alter or amend its termination decree. Specifically, she asserts that her motion should have been granted because (1) there was insufficient evidence to terminate her parental rights under sections 78-3a-407(1), -408(1)(c) and -408(2)(e)[15] of the Utah Code, and (2) subsection 78-3a-408(2)(e) of the Utah Code is unconstitutional.[16]
*620 ¶ 43 To prevail on her insufficiency of evidence assertions, D.A. "must first marshal all the evidence that supports the [juvenile] court's findings" and then demonstrate that the evidence, when viewed in the light most favorable to the court's ruling, is insufficient. State v. Widdison, 2001 UT 60, ¶ 60, 28 P.3d 1278. D.A. has failed to meet her marshaling burden, regarding the juvenile court's conclusion that she abandoned W.A. pursuant to subsection 78-3a-407(1) of the Utah Code.
¶ 44 Two factors support this conclusion. First, contrary to D.A.'s assertion that exhibits 11, 12, and 13 contained the only evidence supporting the juvenile court's abandonment finding, other evidence supported that finding. Indeed, D.A.'s sexual abuse conviction, which is not mentioned in exhibits 11, 12, or 13, supports the verdict because it demonstrates that she was sentenced to a lengthy prison term.
¶ 45 Second, a mere reference to where evidence supporting the verdict can be located (i.e., in exhibits 11, 12, and 13) does not constitute marshaling. Rather, marshaling requires that the party challenging the finding show us where the evidence can be located and list the specific evidence supporting the verdict. See Harding v. Bell, 2002 UT 108, ¶ 19, 57 P.3d 1093. If the rule were otherwise, the marshaling requirement could be easily circumvented. Indeed, a party could satisfy its marshaling obligation by simply placing the record in our hands and declaring that all of the evidence supporting the verdict could be found therein. It is not our obligation, however, "to comb the record for evidence." Tanner v. Carter, 2001 UT 18, ¶ 19, 20 P.3d 332. Consequently, we must assume that sufficient evidence supported the juvenile court's abandonment finding under subsection 78-3a-407(1) of the Utah Code. See, e.g., Utah Med. Prods., Inc. v. Searcy, 958 P.2d 228, 233 (Utah 1998) ("In light of [appellant's] failure to marshal the evidence, we must assume that all the trial court's findings are supported by the evidence.").
¶ 46 Because we must uphold the juvenile court's abandonment finding and that finding alone supports the termination of D.A.'s parental rights, see Utah Code Ann. § 78-3a-407(1) (stating that "[t]he court may terminate all parental rights with respect to one or both parents if it finds ... that the parent or parents have abandoned the child"), there is no reason to address whether sufficient evidence supported the other grounds relied on by the juvenile court. For that same reason, it is unnecessary to address the merits of D.A.'s claim that subsection 78-3a-408(2)(e) of the Utah Code is unconstitutionally vague, violates the procedural due process rights of the Ninth and Fourteenth Amendments to the United States Constitution, and/or runs afoul of the equal protection clauses of both the United States Constitution and the Utah Constitution. Indeed, even if we assume that subsection 78-3a-408(2)(e) is unconstitutional, the juvenile court's conclusion that D.A. had abandoned W.A. pursuant to subsection 78-3a-407(1) is sufficient to justify the termination of D.A.'s parental rights. See Laney v. Fairview City, 2002 UT 79, ¶ 7, 57 P.3d 1007 (explaining that a court should rule "upon the constitutionality of a statute only when such a determination is essential to the decision in a case" (internal quotations and citation omitted)). Accordingly, we conclude that the juvenile court correctly denied D.A.'s motion to amend.

CONCLUSION
¶ 47 We affirm the juvenile court's termination of D.A.'s parental rights for the following reasons. First, subsection 78-3a-110(13) of the Utah Code afforded the juvenile court personal jurisdiction over D.A. Second, asserting personal jurisdiction over D.A. complied with the due process requirements of the Fourteenth Amendment because a parental termination proceeding involves the "status" of a child vis-a-vis its parents and exercising jurisdiction in this case comports with Fourteenth Amendment due process requirements. Third, the juvenile court correctly admitted D.A.'s sexual abuse conviction because it was offered to show that she had been sentenced to ten years in prison, not to prove that she had committed sexual abuse. Fourth, the juvenile court correctly admitted the February *621 25, 1998, adjudication order because D.A. stipulated that the State had custody of W.A. and the adjudication order was admitted exclusively for that purpose. Finally, we conclude that the juvenile court correctly denied D.A.'s motion to amend the termination order because D.A. failed to marshal all of the evidence supporting the conclusion that she had abandoned W.A. pursuant to subsection 78-3a-407(1) of the Utah Code.
¶ 48 Justice HOWE, Justice RUSSON, and Justice WILKINS concur in Associate Chief Justice DURRANT's opinion.
¶ 49 Chief Justice DURHAM concurs in the result.
NOTES
[1] We note that both of W.A.'s parents remained incarcerated through at least the completion of the termination proceeding. Specifically, as of that time, D.A. resided in a Texas penitentiary, and E.A. resided in an Oklahoma prison.
[2] E.A. also appealed. The court of appeals addressed the merits of his appeal, however, and reversed. E.A. v. State (State ex rel. W.A.), 2002 UT App 72, ¶ 39, 2002 WL 355970. We then granted certiorari and resolve that appeal in a separate opinion issued today. State v. E.A. (State ex rel. W.A.), 2002 UT 126, 63 P.3d 100.
[3] Although the majority of the rules governing parental termination proceedings are listed in sections 78-3a-401 to -415 of the Utah Code, subsection 78-3a-110(13) applies to parental termination proceedings because it states that "the fact of [the] minor's presence within the state shall confer jurisdiction on the court in proceedings in minor's cases under this chapter." Utah Code Ann. § 78-3a-110(13) (2002) (emphasis added).
[4] Counsel for the State and the guardian ad litem argue that we should look to the Uniform Child Custody Jurisdiction and Enforcement Act (UCCJEA), Utah Code Ann. §§ 78-45c-101 to -318 (2002), or its predecessor, the Uniform Child Custody Jurisdiction Act (UCCJA), Utah Code Ann. §§ 78-45c-1 to -26 (1998), to resolve this case. We do not reach the question of whether the UCCJEA or the UCCJA applies to this case, however, because of our determination that subsection 78-3a-110(13) of the Utah Code provides adequate justification for the assertion of personal jurisdiction.
[5] We do not reach the issue of whether D.A. had sufficient contacts with Utah because of our conclusions regarding the status exception.
[6] In his article, Judge Traynor wrote that special considerations surrounding the parent-child relationship "would normally preclude jurisdiction over a non-resident defendant having no contact with the forum state." Id. at 661 (emphasis added). However, the sentence that immediately follows in Judge Traynor's article sets forth an exception to his assertion of normal preclusion:

Nevertheless, ... we must recognize that the state where a child is present must be competent to regulate his custody whether his parent is present or not, and if the parent cannot be found or has failed to discharge his parental obligations, that state, given the best notice reasonably possible, should be free to promote the interest of the child by permitting his adoption.
Id. at 662. Read in context, Judge Traynor's intended message regarding the assertion of jurisdiction over the parent-child relationship becomes clear. As the dissent in a recent Utah Court of Appeals case noted, the Shaffer Court, by "favorably citing to this article, ... appears [to have] contemplated that child custody adjudications, and more specifically termination proceedings, are included within the status exception." E.A. v. State (State ex rel. W.A.), 2002 UT App 72, ¶ 48, (Bench, J., dissenting).
[7] Besides those cases ruling that personal jurisdiction could not be asserted over the nonresident parent due to lack of notice, see, e.g., In re One Minor Child, 411 A.2d 951, 952-53 (Del. 1980), and those cases that conclude personal jurisdiction is lacking without discussing the status exception, see, e.g., D.L.C. v. C.A.H., 764 So.2d 562, 564-65 (Ala.Civ.App. 1999), our research reveals only two cases that have declined to extend the status exception to parental termination proceedings: In re Doe, 83 Hawai`i 367, 926 P.2d 1290, 1299 (1996), and In re Vernon R.V., 128 N.M. 242, 991 P.2d 986, 988 (App. 1999).
[8] See Wenz, 598 P.2d at 1092, cert. denied, 444 U.S. 1071, 100 S.Ct. 1015, 62 L.Ed.2d 753 (1980) (holding, among other things, "that personal jurisdiction over a parent is not necessary to the termination of his parental rights to a minor child, so long as the parent has actual notice of the termination proceedings or the District Court... makes an effort reasonably calculated to provide notice to the parent"); In re Marriage of Hudson, 434 N.E.2d 107, 117-19 (Ind.Ct.App. 1982 (holding that "the trial court's assertion of jurisdiction over the custody proceeding without obtaining in personam jurisdiction ... did not violate ... due process rights" after discussing the Shaffer court's language regarding the status exception), cert. denied, 459 U.S. 1202, 103 S.Ct. 1187, 75 L.Ed.2d 433 (1983); In re A.E.H., 468 N.W.2d at 200-206 (determining that the lower court properly exercised jurisdiction under the UCCJA after broadly construing "custody proceeding" to include termination of parental rights), cert. denied, 502 U.S. 925, 112 S.Ct. 338, 116 L.Ed.2d 278 (1991).
[9] We do not, however, decide in this case whether the status exception extends to child custody proceedings.
[10] We note that Utah Rule of Evidence 410 is identical to rule 410 of the Federal Rules of Evidence.
[11] In its final order terminating D.A.'s parental rights, the juvenile court found that "[t]he mother's convictionsexual abuse of a childconstitutes sexually cruel and abusive conduct towards a child" and held D.A. unfit pursuant to subsection 78-3a-408(4)(a) of the Utah Code, which provides that sexual abuse of a child constitutes prima facie evidence of unfitness. The State concedes that the juvenile court's use of D.A.'s conviction in this manner was improper, but argues that the error was harmless because the legitimate use of D.A.'s conviction supported the determination that she was unfit and that she had abandoned W.A. We agree both that the juvenile court incorrectly used the substance of D.A.'s conviction and that this use of her conviction constituted harmless error. See State v. Evans, 2001 UT 22, ¶ 20, 20 P.3d 888 ("[H]armless error is an error that is sufficiently inconsequential that there is no reasonable likelihood that it affected the outcome of the proceedings."). As explained in part V of this opinion, the fact that the conviction showed that D.A. had been sentenced to ten years in prison was enough to sustain the juvenile court's conclusion that D.A. had abandoned W.A. under subsection 78-3a-407(1) of the Utah Code. The court's improper use of D.A.'s conviction was therefore harmless.
[12] Our conclusion is also supported by the fact that the plain language of Utah Rule of Evidence 410 applies exclusively to evidence of nolo contendere pleas, not evidence of judgments or convictions resulting from such pleas. See Olsen, 189 F.3d at 59, 62 (reasoning that "[o]nly the nolo plea itself is barred by the relevant language of the rule" and "there is no reason ... to expand Rule 410 beyond the scope of its plain language").
[13] Rule 803(22) of the Federal Rules of Evidence is identical to Utah Rule of Evidence 803(22).
[14] In reaching this conclusion, we note that D.A. does not assert that the juvenile court erred in taking judicial notice of the adjudication under rule 201(b) of the Utah Rules of Evidence.
[15] We note that all of the statutory sections cited in this part of our opinion refer to the 1998 version of the Utah Code that was in effect at the time of the termination proceeding. This is important to note because some of the sections were reordered in 2002.
[16] D.A. also asserts that the juvenile court erred in relying on subsection 78-3a-408(4) of the Utah Code as a basis for terminating her parental rights. We agree. As explained later in this section, however, an alternative ground exists that supports the juvenile court's conclusion. Accordingly, the juvenile court's reliance on subsection 78-3a-408(4) was harmless.