Jurden, P.J.
I. INTRODUCTION
This dispute arises from Defendant, Jive Communication, Inc.'s ("Jive"),[1] purchase of a business from Plaintiff, KnighTek, LLC ("KnighTek"),[2] and a related entity. Following the purchase, KnighTek sued Jive for rescission based on fraudulent misrepresentation and fraudulent concealment. Jive suggests this is a case of seller's remorse - the principal of KnighTek, Erik Knight ("Knight") is "simply unhappy with the financial terms of a commercial buyout that he initiated and then negotiated at arm's length,"[3] and argues there is no well-pled misrepresentation or concealment.[4] Before the Court is Jive's Motion to Dismiss pursuant to Rules 9(b) and 12(b)(6). For the reasons set forth below, Jive's Motion to Dismiss is GRANTED.
II. FACTS
The following facts are drawn from KnighTek's Complaint and Exhibits[5] and the email chain attached to Jive's Opening Brief as Exhibit 1 thereto.[6]
*496 Asset Purchase Agreement and Agency Agreement
Pursuant to the Asset Purchase Agreement ("APA"), Jive purchased ComVoice, Inc. and Wentcrz Holdings, LLC, including, among other assets, Customer accounts ("Customer Accounts"), from KnighTek's affiliate EKnight Holdings, LLC ("EKnight").[7] Around the same time, Jive and KnighTek entered into an "Authorized Agent Agreement" ("Agency Agreement").[8]
Under the APA, Jive agreed that if it attained a revenue goal within twelve months of the closing, it would issue warrants to KnighTek to purchase 15,000 shares of Jive common stock. The revenue goal was met, and on March 15, 2015, pursuant to Knight's direction, Jive issued the warrants to EKnight Holdings, LLC.[9]
One portion of the consideration in the APA was contingent payments based on the future revenue of the Customer Accounts. The agreed upon payment plan for Customer Accounts was set forth in the Agency Agreement. Pursuant to the Agency Agreement, Jive agreed to pay KnighTek, in monthly installments, seventy percent (70%) of the net revenue Jive received on the Customer Accounts until the total payments equaled the "Cap Amount."[10] Additionally, in the event of a "Change of Control,"[11] Jive agreed to pay KnighTek, no later than 30 days after such a Change *497 of Control, "cash equal the amount by which the Cap Amount then exceeds the aggregate of all payments made to the Company...."[12] Stated differently, as pled by KnighTek, if Jive has a "Change of Control" during the term of the Agency Agreement, then Jive must pay KnighTek the difference between the Cap Amount and the aggregate amount of all contingent payments already made.[13] A Change of Control as defined in the Agency Agreement, includes, among other triggers, the sale of substantially all of Jive's assets or a change of more than 50% of Jive's ownership.[14]
The Agency Agreement also contains provisions concerning the nature of the parties' relationship. It expressly provides that KnighTek "is an independent contractor and is not an employee, partner, or co-venturer of, or in any other service relationship with Jive."[15] Under the terms of the Agency Agreement, Jive and KnighTek are authorized to compete with one another.[16]
In a paragraph delineating the "Responsibilities of Jive," the Agency Agreement states:
7. Except as expressly set forth in this Agreement, Jive shall have no further duties or obligations under this Agreement.[17]
2018 Letter Agreement
In September 2017, Knight approached Jive's Chief Operating Officer, Mike Sharp, and Jive's Vice President of Finance, Samuel Simmons, and asked whether Jive would be willing to make an accelerated lump-sum payment in return for a discount on the Cap Amount due.[18] Simmons responded to Knight, in September, indicating that Jive had no interest in a lump-sum payment, even in return for a discount.[19]
Then, on January 25, 2018, Simmons emailed Knight an offer (from Jive) to accelerate the Cap Amount due with a lump-sum payment of $964,928.00, which, according to KnighTek, constituted a $1,783,514.89 discount.[20] According to KnighTek, Simmons' January 25th email "instilled a sense of urgency," because it stated, "[t]he proposal outlined above is based on availability of funds across multiple acquisitions and with a goal to complete by the end of January 2018."[21] In response to Simmons' email, Knight engaged in negotiations with Jive from January 25, 2018 through February 5, 2018, during which Simmons "repeatedly emphasized that Jive had limited funds and that Jive was considering several other discount acceleration requests from other *498 businesses that Jive had acquired."[22] In an email sent to Knight on January 25, 2018, Simmons stated, "[a]s a reminder, we are targeting by the end of January, and I'm juggling a number of other offers (some of which have already been accepted), so the sooner the better as availability of funds depends on who moves quickest and how beneficial the economics are."[23]
On February 5, 2018, Simmons emailed Knight advising that Jive's Board of Directors agreed to buy out KnighTek's Future Commissions for $1,750,000.[24] According to KnighTek, Simmons reemphasized the "false urgency" in that email by stating, "I was able to get your buyout approved conditional on speedy completion, or they want me to move forward with someone else at this time given our goal date of the 31st that we're a little behind on."[25] That same day, Jive's General Counsel, Benjamin King, sent Knight a draft letter agreement to buy out KnighTek's Future Commissions for $ 1,750,000.00.[26] KnighTek alleges this constituted a $998,442.89 discount on the Cap Amount due,[27] but Simmons told Knight that the $1.75 million agreed-to payment was "[$]300,000 more than the [Jive] board thinks they owe you."[28] In that draft letter agreement, Jive sought to obtain the surrender of Knight's warrants for 15,000 shares of Jive common stock held by EKnight Holdings, LLC.[29]
Knight emailed King on February 5, 2018 asking to revise the draft letter agreement[30] to exclude the surrender of his Jive warrants. Jive agreed and revised the letter agreement accordingly.
On February 6, 2018, Knight e-signed the final letter agreement ("2018 Letter Agreement") and transmitted it to Jive.[31] The next day, Jive wired a lump-sum payment of $1,750,000 to KnighTek in complete satisfaction of the Cap Amount due under the 2018 Letter Agreement.[32] The 2018 Letter Agreement expressly states:
[A]ll amounts due and payable (or that may become due and payable) from the Company [Jive] to Payees [KnighTek and EKnight] under the Agreements shall be deemed paid in full and any and all contingent payments, commissions payments or other obligations of [Jive] with respect to payments under the Agreements shall be immediately deemed fully paid, discharged, satisfied, released, and terminated....
The Payees hereby certify, acknowledge and agree...that (i) the Payment Amount set forth above is in lieu of, and is full satisfaction of, any amounts owed or due (or that may become due) to Payees under the Agreements, (ii) upon payment of the Payment Amount, without any further action required by the Company or the Payees, all obligations of the Company set forth in the Agreements with respect to any ongoing, continuing *499 or contingent payments and obligations and any commissions payments and any security interests effected therein shall be immediately deemed fully paid, discharged, satisfied, released, and terminated....[33]
On February 8, 2018, a press release announced that LogMeIn was acquiring Jive for $342,000,000.[34] And on April 3, 2018, LogMeIn announced that its acquisition of Jive was complete.[35]
KnighTek sued Jive in the Court of Chancery on March 19, 2018, alleging the same causes of action and based on the same facts it alleges here. KnighTek voluntarily dismissed its Chancery Complaint on April 20, 2018 and filed suit in this Court on April 25, 2018.
III. PARTIES' CONTENTIONS
KnighTek argues it is entitled to rescission due to Jive's fraudulent misrepresentation (Count I) and fraudulent concealment (Count II). According to KnightTek, Jive "utilized blatant misrepresentations in its premeditated scheme to defraud a party to a contractual relationship."[36] KnighTek maintains that the officers and directors of Jive, including the individuals who negotiated the 2018 Letter Agreement with Knight, knew a "Change of Control" was imminent which would have required Jive to make full payment to KnighTek of the Cap Amount due,[37] and intentionally failed to disclose that to Knight. KnighTek also alleges that Jive intentionally misrepresented to Knight that if KnighTek did not immediately agree to a discounted lump-sum payment, KnighTek would have to wait more than five years before the Cap Amount due would be fully satisfied because Jive would use its limited funds to pay off other businesses that were willing to accept a discounted payoff of monies still due from their acquisition by Jive.[38] KnighTek claims Jive's fraudulent conduct "coerced" Knight into signing the Letter Agreement.[39]
KnighTek further alleges that because of its relationship with KnighTek pursuant to the Agency Agreement, Jive owed KnighTek a duty to act in good faith with respect to the Agency Agreement and Jive's communications with Knight.[40] KnighTek further alleges that Jive owed a fiduciary duty to KnighTek, Knight and EKnight because they are holders of warrants of Jive Common Stock.[41]
According to Jive, there was no fraud, and KnighTek failed to adequately plead there was fraud. Jive maintains there is no well-pled allegation (1) of a false representation of presently existing fact, (2) that a "representor" made a statement which they knew to be false or made recklessly, or (3) that KnighTek acted in reasonable reliance. Jive denies owing a fiduciary duty to KnighTek or having a special relationship with KnighTek such that Jive had a "duty to speak." In the absence of such a *500 duty, Jive alleges there cannot be any material omission or concealment.
IV. STANDARD OF REVIEW
Pursuant to Superior Court Civil Rule 12(b)(6), dismissal is appropriate when a plaintiff cannot "recover under any reasonably conceivable set of circumstances susceptible of proof under the Complaint."[42] When considering a motion to dismiss, the Court should not consider conclusory allegations that lack specific supporting factual allegations,[43] nor should the Court draw unreasonable inferences in favor of the non-moving party.[44] The Court need not "accept every strained interpretation of the allegations."[45]
Under Superior Court Civil Rule 9(b),[46] claims of fraud have a heightened pleading standard that requires particularized fact pleadings.[47] The purpose of Rule 9(b) is to apprise the non-movant of the acts or omissions by which it is alleged that a duty has been violated.[48] The factual circumstances, under Rule 9(b), refer to the time, place, and contents of the false representations; the identity of the person making the misrepresentation; and what he obtained thereby.[49]
V. DISCUSSION
Jive argues KnighTek failed to plead a claim for fraudulent misrepresentation under Utah law.[50] To establish a claim for fraudulent misrepresentation (Count I), under Utah law, a plaintiff must prove:
(1) a representation; (2) concerning a presently existing material fact; (3) which was false; (4) which the representor either (a) knew to be false, or (b) made recklessly, knowing that he had insufficient knowledge upon which to base such representation; (5) for the purpose of inducing the other party to act upon it; (6) that the other party, acting reasonably and in ignorance of its falsity; (7) did in fact rely upon it; (8) and was thereby induced to act; (9)
*501 to his injury and damage.[51]
In order to establish a claim for fraudulent concealment (Count II) under Utah law, a plaintiff must prove:
(1) the non-disclosed information is material, (2) the non-disclosed information is known to the party failing to disclose, and (3) there is a legal duty to communicate.[52]
Under Utah law, misrepresentation (applying to fraudulent misrepresentation) and omissions or fraudulent affirmative statements (applying to fraudulent concealment) are similar. Under Utah law, "neither material omissions nor fraudulent affirmative statements are actionable absent a duty to speak the truth."[53] A misrepresentation "may be made either by affirmative statement or by material omission, where there exists a duty to speak."[54] Both fraud theories require a duty to speak before any actionable wrongdoing can occur.
KnighTek alleges the following misrepresentations, omissions, and concealments in its Complaint[55] :
¶ 2 "Jive concealed the fact it was in final negotiations to sell Jive to LogMeIn USA, Inc. Instead, Jive misrepresented that unless KnighTek immediately accepted its offer, KnighTek would likely have to wait more than five more years, based on Jive's historical paydown record, before KnighTek would receive full payment of the Cap Amount due."
¶ 3 "Absent Jive's fraudulent concealments and misrepresentations concerning its imminent Change of Control, KnighTek would never have entered into the [Letter Agreement] or discounted the Cap Amount to its detriment."
¶ 21 "Mr. Simmons' email instilled a sense of urgency, stating that '[t]he proposal outlined above is based on availability of funds across multiple acquisitions and with a goal to complete by the end of January 2018.' "
¶ 22 "Mr. Simmons and [Knight] thereafter engaged in negotiations from January 25, 2018 through February 5, 2018, in which Mr. Simmons repeatedly emphasized that Jive had limited funds and that Jive was considering several other discount acceleration requests from other businesses Jive had acquired."
¶ 23 "Mr. Simmons stated, '[a]s a reminder, we are targeting by the end of January, and I'm juggling a number of other offers (some of which have already been accepted), so the sooner the better as availability of funds depends on who moves quickest and how beneficial the economics are.' "
¶ 24 "Reemphasizing the false urgency, [Simmons] stated: 'I was able to get your buyout approved conditional on speedy completion, or they want me to move forward with someone else at this time given our goal of the 31st that we're a little behind on.' "
¶ 35 "Upon information and belief, the officers and directors of Jive, including the individuals who negotiated the [Letter]
*502 Agreement with [Knight], knew at all relevant times that a Change of Control was imminent which would have required Jive to make full payment to KnighTek of the Cap Amount due."
¶ 36 "Despite knowing that a Change of Control was imminent, Jive intentionally failed to disclose the pending transaction to [Knight]."
¶ 37 "Despite knowing that a Change of Control was imminent, Jive intentionally misrepresented...that if [KnighTek] failed to immediately agree to a discounted lump-sum payment, [it] would have to wait more than five years before the Cap Amount due would be fully satisfied."
¶ 38 "Despite knowing that a Change of Control was imminent, Jive intentionally misrepresented to [Knight] that if [KnighTek] failed to immediately agree to a discounted lump-sum payment, Jive would use its limited funds to pay other businesses that were willing to accept a discounted payoff of monies still due from their acquisition by Jive."
Fraud: Pleading with Particularity
It is well established that a plaintiff alleging fraud must make a particularized pleading regarding the time, place, and contents of the false representation, the facts misrepresented, the identity of the person making the misrepresentation, and what the person gained as a result.[56] Other than the statements attributed to Simmons, the Complaint fails to identify the person(s) who made the misrepresentations alleged in paragraphs 2, 3, 35, 36, 37 and 38, or the time and place of the misrepresentations. The bulk of the allegations in KnighTek's fraudulent misrepresentation count identify the representor(s) only as "the officers and directors of Jive" or simply "Jive."[57] In paragraph 35, the allegation includes "individuals who negotiated the [Letter] Agreement" but fails to identify any of those individuals by name.
Not only does the Complaint fail to identify the representors other than Simmons, it fails to allege that any of the unidentified representors knowingly or recklessly made false statements with regard to the alleged prediction regarding payoff rate (paragraphs 2, 37). KnighTek fails to identify the who made the statements, or the time and place they were made.[58] The allegations fail to meet the heightened pleading requirement of Rule 9(b) and therefore, fail to state a claim.
No Present Existing Material Facts
With regard to the alleged representations attributed to Simmons (paragraphs 21-24), they constitute forward-looking predictions, opinion-type statements or subjective opinions,[59] not statements *503 concerning a presently existing material fact. And nowhere in the Complaint does KnighTek allege Simmons' representations were false, that Simmons knew them to be false, or made them recklessly, knowing he had insufficient knowledge upon which to base such representation.[60] There are no allegations that Simmons knew about the potential merger or the timing of any merger announcement.
KnighTek alleges Simmons created a "false urgency," but this allegation is conclusory and unsupported. Jive and KnighTek continued to negotiate after the date Knight alleges Jive targeted to complete their deal.[61] And nowhere in the Complaint does KnighTek allege it asked for (or needed) more time to complete the negotiations. Without such an allegation in the Complaint, the "false urgency" allegation is not well-pled and cannot support a fraud claim.
Misrepresentation and Concealment
The Agency Agreement clearly contemplated the potential for a Change of Control,[62] and thus KnighTek was on notice from April 2014 forward that an acquisition or IPO of Jive was a possibility.[63] KnighTek, negotiating at arms-length with Jive, was obligated to take reasonable steps to inform itself with respect to its preexisting contractual rights, and thus protect its own interests.[64] While Jive was better positioned to know the relevant information, KnighTek, a sophisticated party, could have inquired prior to the execution of a new agreement about events that would impact its interests, but it did not.[65]
Thus, although KnighTek alleges that Jive actively concealed or misrepresented that Jive was engaged in merger negotiations and a Change of Control was imminent (paragraphs 2, 3, 35-38); the Complaint fails to allege that KnighTek *504 conducted due diligence into whether a Change of Control was imminent or whether Jive was on the verge of entering into a merger or other sale. Nowhere in the Complaint does KnighTek allege that it sought any representation regarding the timing of a Change of Control or the likelihood of a Change of Control. KnighTek cannot now claim after-the-fact that Jive fraudulently concealed such information, when KnighTek failed to inquire or investigate the possibility of a Change of Control.[66] KnighTek cannot reasonably rely on a representation it failed to seek.[67]
Fiduciary Duties
Under Utah law, "neither material omissions nor fraudulent affirmative statements are actionable absent a duty to speak the truth."[68] A duty to disclose is material to a claim for fraudulent misrepresentation and fraudulent concealment. A duty to disclose may arise when there is a fiduciary duty between the parties or a special relationship that gives rise to an independent duty.[69] Under Utah law, courts will not intervene to impose a duty when the parties negotiated at arm's length with no special relationship between them.[70]
KnighTek seeks to establish a fiduciary duty on the part of Jive (and thus a duty to speak), based on the warrants to purchase Jive Common Stock.[71] But the warrants at issue are held by EKnight, not by Knight or KnighTek.[72] And even if KnighTek held the warrants, a Delaware corporation does not owe fiduciary duties to potential, future stockholders such as warrant holders.[73] Even assuming arguendo , KnighTek was owed a fiduciary duty, that duty would flow through the officers and directors of Jive, and KnighTek has not alleged any claims against Jive's officers and directors.
KnighTek alleges that Jive owed it a duty of good faith, which prohibited Jive from taking any action intending to deprive KnighTek of its right to receive the *505 fruits of the Agency Agreement.[74] As pled, KnighTek implies that the alleged duty of good faith created a special relationship on par with a fiduciary relationship, obligating Jive to disclose its engagement in merger negotiations. The Complaint, however, does not allege any specific provisions in the APA or the Agency Agreement (collectively the "Agreements") requiring Jive to disclose the possibility of a merger and, in fact, none exists.[75]
The Agreements establish an arms-length commercial relationship between sophisticated parties. In the Agency Agreement, KnighTek is described as an "independent contractor," not an employee, partner or co-venturer of Jive,[76] and Jive and KnighTek retain the right to compete with one another. Jive's exclusive "Responsibilities," established by the Agreements, are limited to the contingent payments and the provision of certain equipment,[77] and that section of the Agency Agreement concludes by stating, "[e]xcept as expressly set forth in this Agreement, Jive shall have no further duties or obligations...."[78]
The Agreements do not establish a special or fiduciary relationship between the parties or impose on Jive any duty to make affirmative disclosures on issues KnighTek did not ask about.[79] Absent a "duty to speak," failing to speak is not actionable.[80]
Contractual Waiver of Change of Control Rights
Jive argues, and the Court agrees, that KnighTek's concealment claim fails because it is wrong about the effect of the merger announcement.[81] Based on the definition of "Change of Control," the announcement of the merger is not a triggering event. The triggering event is April 3, 2018, when the merger closed.[82] Moreover, the timing of the announcement is irrelevant because when Jive wired the $1,750,000.00 to KnighTek on February 7, 2018 there was no amount still outstanding under the Cap Amount. As of the receipt of that payment, all of Jive's obligations, set forth in the Agreements were immediately "deemed fully paid, discharged, satisfied, released and terminated."[83]
As Jive correctly points out, the fact that the 2018 Letter Agreement was executed on February 6, 2018 and the Jive merger was announced two days later is irrelevant. Regardless of whether the announcement happened two days, a month, or a year later, KnighTek ran the same risk - "that by accepting a certain lump sum [payment] at what it believed to be a discount, it was giving up the ability to get what it believed to be a higher amount later upon a Change of Control."[84] KnighTek got what it negotiated and bargained for. The facts as pled and the express language in the Agreements do not support the fraud claims.
*506 VI. CONCLUSION
Accepting all well-pled allegations as true, and drawing all reasonable factual inferences in favor of KnighTek, the Court finds that KnighTek's fraud claims fail to satisfy the heightened pleading standard of Rule 9(b) and the Complaint fails to state a claim upon which relief may be granted. Consequently, Defendant's Motion to Dismiss Plaintiff's Complaint is GRANTED.
IT IS SO ORDERED.

Jive is a Delaware Corporation with its principal place of business in Utah. Jive distributes and sells information, communications services and related equipment. KnighTek, LLC's Complaint & Exhibits, E-File 61957380, ¶ 5.

KnighTek is an Arizona LLC with its principal place of business in Arizona. Compl. ¶ 4.

Jive Communications, Inc.'s Opening Brief in Support of its Motion to Dismiss Plaintiff's Complaint ("Op. Br."), E-File 62142637, at 1.

Id.

See generally Compl. & Exs.

Op. Br. Ex. 1 (email chain between Simmons and Knight). As a general rule, when considering a Rule 12(b)(6) motion to dismiss the Court does not consider matters outside of the pleading. Vanderbilt Income and Growth Assoc., L.L.C. v. Arvida/JMB Managers, Inc. , 691 A.2d 609 (Del. 1996) (citing In re Santa Fe Pac. Corp. S'holder Litig., 669 A.2d 59, 68 (Del. 1995). However, there are two exceptions to this general rule: (1) when the document is integral to the plaintiff's claim and is incorporated into the complaint by reference; and (2) where the document is not being relied upon to prove the truth of its contents. Lawver v. Christiana Care Health Sys., Inc. , 2017 WL 1167321, at *3 n.42 (Del. Super. 2017). In evaluating Jive's 12(b)(6) motion, the Court considers the email chain because the emails between Simmons and Knight are integral to KnighTek's claims and are quoted numerous times in the Complaint. Furthermore, the Court is not using the emails to prove the truth of the statements. The emails merely contextualize KnighTek's allegations.

Compl. ¶ 10. The APA is attached as Exhibit A to the Complaint. Compl. Ex. A, E-File 61957380. The APA is between ComVoice, Inc. and Wentcrz Holdings, LLC (together, the "Company"), and EKnight Holdings, LLC (the "Owner"), and Jive (the "Buyer"). Id. at 1. Knight is the sole owner and manager of EKnight Holdings, LLC. Compl. ¶ 16.

The Agency Agreement is attached as Exhibit B to the Complaint. Compl. Ex. B.

Compl. ¶ 16.

Compl. ¶ 12; see also Compl. Ex. B, at 13. The APA states:
For each handset that is active in an Assigned Customer Account on the first day of the month in which the commission is paid, Jive shall pay the Agent [KnighTek] an ongoing commission calculated by multiplying the monthly recurring revenue for that handset by 70%, up to a maximum aggregate commission cap equal to the product of ComVoice's 2013 total revenues (as reported in the 2013 audited financial statements prepared in accordance with GAAP) multiplied by 2.7 (the "Cap Amount"). All recurring or one-time regulatory items (e.g. state, local or federal taxes, regulatory fees) are not commissionable.
Id.

"Change of Control" is defined in the Agency Agreement as:
(i) the acquisition of Jive by another entity by means of any transaction or series of related transactions to which Jive is party (including, without limitation, any equity acquisition, reorganization, merger or consolidation but excluding any sale of equity for capital raising purposes) other than a transaction or series of transactions in which the holders of the voting securities of Jive outstanding immediately prior to such transaction continue to retain (either by such voting securities remaining outstanding or by such voting securities being converted into voting securities of the surviving entity), as a result of equity in Jive held by such holders prior to such transaction, at least 50% of the total voting power represented by the voting securities of Jive or such surviving entity outstanding immediately after such transaction or series of transactions; (ii) a sale, lease or other conveyance of all or substantially all of the assets of Jive; or (iii) any liquidation, dissolution or winding up of Jive, whether voluntary or involuntary.
Compl. Ex. B, at 8.

Compl. Ex. B, at 2, ¶ 2. The "Company" refers to ComVoice, Inc. and Wentcrz Holdings, LLC. See Compl. Ex. A, at 1.

Compl. Ex. B, at 2.

Compl. ¶ 15; see Compl. Ex. B, at 8.

Compl. Ex. B, at 1.

See id.

Id. at 2, ¶ 7.

Compl. ¶ 17.

Id. ¶ 18.

Id. ¶ 20. According to KnighTek, as of January 2018, the remaining Cap Amount due KnighTek was $2,748,442.89. Id. ¶ 19. Jive disputes this allegation, arguing the agreement reached between KnighTek and Jive "nowhere mentions a discount or acceleration," and the agreement ultimately reached was a "negotiated resolution of a dispute over the Cap Amount." Op. Br. at 19. For the purpose of this opinion, the Court need not determine the correct Cap Amount. Id.

Compl. ¶ 21.

Id. ¶ 22.

Id. ¶ 23.

Id. ¶ 24.

Id.

Id.

Id. ¶ 26.

Op. Br. Ex. 1.

Compl. ¶ 26. EKnight Holdings, LLC is the sole member of KnighTek. Id.

In its Complaint, KnighTek refers to the 2018 Letter Agreement as the "Acceleration Agreement." Because the agreement at issue does not mention "acceleration," the Court refers to it simply as the "2018 Letter Agreement." Compl. Ex. C.

Id. ¶¶ 28, 29.

See Compl. ¶ 30.

Compl. Ex. C.

According to KnighTek, the preparation necessary to negotiate a large-scale acquisition of a company such as Jive requires weeks, if not months, of lead time. Compl. at ¶¶ 31, 32.

Id. ¶ 33.

Ans. Br. at 10.

Compl. ¶ 35.

Id. ¶¶ 37, 38.

Id. ¶ 39. Although KnighTek claims Knight was "coerced" into signing, the Complaint does not allege a claim for fraudulent inducement.

Id. ¶ 47.

Id. ¶ 48.

Boyce Thompson Inst. v. MedImmune, Inc. , 2009 WL 1482237, at *4 (Del. Super. 2009) (citing Browne v. Robb , 583 A.2d 949, 950 (Del. 1990) ).

Nieves v. All Star Title, Inc. , 2010 WL 4227057, at *4 (Del. Super. 2010) (citation omitted), aff'd, 21 A.3d 597 (Del. 2011) (TABLE).

Price v. E.I. DuPont de Nemours and Co. , 26 A.3d 162, 166 (Del. 2011), overruled on other grounds by Ramsey v. Ga. S. Univ. Advanced Dev. Ctr. , 189 A.3d 1255 (Del. 2018) ("Overruled our prior cases, to the extent necessary..." to distinguish the analysis for nonfeasance and misfeasance but not the Courts discretion when determine a motion to dismiss); see also Malpiede v. Townson , 780 A.2d 1075, 1083 (Del. 2001) ; Sipple v. Connections Cmty. Support Programs, Inc. , 2018 WL 3956477 (Del. Super. 2018) (citing Price, 26 A.3d 162 ).

Malpiede , 780 A.2d at 1083.

Rule 9(b) states: "In all averments of fraud, negligence, or mistake, the circumstances constituting fraud, negligence or mistake shall be stated with particularity. Malice, intent, knowledge and other condition of the mind of a person may be averred generally."

Trenwick Am. Litig. Tr. v. Ernst & Young, L.L.P. , 906 A.2d 168, 207-08 (Del. Ch. 2006), aff'd sub nom. Trenwick Am. Litig. Tr. v. Billett , 931 A.2d 438 (Del. 2007) (TABLE).

Mancino v. Webb , 274 A.2d 711,713 (Del. Super. 1971).

See Trenwick , 906 A.2d at 207-08 ; see also Airborne Health, Inc. v. Squid Soap, L.P., 984 A.2d 126, 142 (Del. Ch. 2009).

Op. Br. at 13. KnighTek alleges and Jive does not contest that Utah law applies to the validity, construction and performance of the Agency Agreement. Compl. ¶¶ 8-9 (citing Compl. Ex. B, at 11, ¶ 29); see also Op. Br. at 8, 13.

Larsen v. Exclusive Cars, Inc. , 97 P.3d 714, 716 (Utah Ct. App. 2004) (citation omitted).

Smith v. Frandsen , 94 P.3d 919, 923 (Utah 2004) (quoting Hermansen v. Tasulis , 48 P.3d 235, 242 (Utah 2002).

Chapman v. Primary Children's Hosp. , 784 P.2d 1181, 1186 (Utah 1989) (citing Sugarhouse Fin. Co. v. Anderson, 610 P.2d 1369, 1373 (Utah 1980) ; Elder v. Clawson , 14 Utah 2d 379, 384 P.2d 802, 804 (1963) ).

Sugarhouse , 610 P.2d at 1373.

Compl., E-File 61957380, ¶¶ 2, 3, 21-24, 35-38.

See Trenwick , 906 A.2d at 207-08 ; Northpointe Hldgs., Inc. v. Nationwide Emerging Managers, LLC, 2010 WL 3707677, at *8 (Del. Super. 2010) ; H-M Wexford, LLC v. Encorp. Inc. , 832 A.2d 129, 145 (Del. Ch. 2003). Although Rule 9(b) provides that "knowledge...may be averred generally," where pleading a claim of fraud has at its core the charge that the defendant knew something, there must, at least, be sufficient well-pled facts from which it can reasonably be inferred that this "something" was knowable and that the defendant was in a position to know. Trenwick , 906 A.2d at 208 (citations omitted).

See Compl. ¶¶ 35-38. The same is true with respect to paragraphs 39-41 which allege "Jive's fraudulent conduct."

See Hauspie v. Stonington Partners, Inc. , 945 A.2d 584, 587-88 (Del. 2008).

Under Utah law, such statements do not constitute fraud. See Wright v. Westside Nursery, 787 P.2d 508, 512-13 (Utah Ct. App. 1990) (citing Baird v. Eflow Inv. Co. , 76 Utah 232, 289 P. 112, 114 (1930) ) (mere expressions of opinion or "trader's talk" about issues of judgment and estimation of value are not fraudulent misrepresentations); Boud v. SDNCO, Inc. , 54 P.3d 1131, 1135-36 (Utah 2002) (noting (1) an affirmation of fact is a statement which is objective in nature; (2) a promise must be highly specific or definite; and (3) an opinion is a statement that is neither objective nor specific enough to be a fact or promise). For example, Simmons' representation that unless KnighTek immediately accepted Jive's offer, KnighTek would likely have to wait more than five years based on Jive's historical paydown record before it could receive full payment of the Cap Amount, is a prediction regarding the future and therefore cannot sustain a fraud claim. See e.g., Thornton v. Countrywide Mortg. Ventures, LLC, 2011 WL 4964275, at *3 (D. Utah 2011) (noting that a negligent misrepresentation claim cannot be based on the "statement of a future event" (citing Andalex Resources, Inc. v. Myers , 871 P.2d 1041, 1047 (Utah Ct. App. 1994) ) ). In Andalex, the court held that to plead a fraud claim by clear and convincing evidence, the plaintiff must show the misrepresentation is a "presently existing fact." The plaintiff must prove that the "representor, at the time of the representation, did not intend to perform the promise and made the representation for the purpose of deceiving the promisee" for a misrepresentation about a future event to be a "presently existing fact." See Andalex , 871 P.2d at 1047.

KnighTek claims in its Answering Brief it "unequivocally alleges [in its Complaint] that Jive's representations, made primarily through Mr. Simmons, were false." Ans. Br., E-File 62241852, at 9. Contrary to KnighTek's assertion, the Complaint does not allege Simmons' specific statements were false. KnighTek only alleges Simmons "instilled" a "false urgency." See Compl. ¶¶ 21, 24.

Compl. ¶ 29.

Compl. Ex. B, at 2, 8.

See Compl. ¶¶ 14, 15; Compl. Ex. B, at 1, 2.

See Sugarhouse , 610 P.2d at 1373.

See DeBry v. Valley Mortg. Co. , 835 P.2d 1000, 1007 (Utah Ct. App. 1992) (lender did not have a duty to disclose - absent a contractual or fiduciary relationship -, to the purchaser, the fact that the builder did not get a permit for the apartment building or that there were building code violations).

Sugarhouse , 610 P.2d at 1374.

Id.

Chapman , 784 P.2d at 1186 (citing Sugarhouse Fin. Co. , 610 P.2d at 1373 ; Elder , 384 P.2d at 804 ).

See Yazd v. Woodside Homes Corp. , 143 P.3d 283,286-87 (Utah 2006) ; Davencourt at Pilgrims Landing Homeowners Ass'n. v. Davencourt at Pilgrims Landing LC, 221 P.3d 234, 247 (Utah 2009). Yazd and Davencourt give specific analysis for when a duty arises between a builder/contractor/buyer but also give general analysis for when a special relationship is created.

See First Sec. Bank of Utah, N.A. v. Banberry Dev. Corp. , 786 P.2d 1326, 1334 (Utah 1990) ; Arnson v. My Investing Place L.L.C., 2013 WL 5724048, at *3-4 (D. Utah 2013).

Compl. ¶ 48.

Id. ¶ 16.

Under the Internal Affairs Doctrine, Jive's fiduciary duties are determined by the law of Delaware, the state in which Jive is incorporated. See e.g., Wasatch Oil & Gas, LLC v. Reott , 263 P.3d 391,393 (Utah Ct. App. 2001) ("States normally look to the State of a business' incorporation for the law that provides the relevant corporate governance...." (quoting Atherton v. FDIC , 519 U.S. 213, 224, 117 S.Ct. 666, 136 L.Ed.2d 656 (1997) ) ); Cont'l Airlines Corp. v. Am. Gen. Corp. , 575 A.2d 1160, 1168 (Del. 1990) (warrant holders are only protected by contractual rights); In re Nine Sys. Corp. S'holders Litig. , 2013 WL 771897, at *7 (Del. Ch. 2013) ("the holders of...warrants are not stockholders and are not owed fiduciary duties."); Reis v. Hazelett Strip-Casting Corp. , 28 A.3d 442, 478 (Del. Ch. 2011) ("until the warrant or option is exercised, the underlying shares are not issued, and the warrant or option holders rights are entirely contractual.").

See Compl. ¶¶ 47-49.

See Compl. Exs. A, B.

See Compl. Ex. B, at 1.

Id. at 2, ¶¶ 2-6.

Id. at 2, ¶ 7 (emphasis added).

See e.g., First Sec. Bank of Utah, N.A. , 786 P.2d at 1334.

See Northpointe Hldgs. , 2010 WL 3707677, at *8 ("An independent duty to speak, imposed by law and separate from the contract requirements, must exist before an action for silent fraud can be brought....").

Op. Br. at 25-27.

See Compl. Ex. B, at 8.

Compl. Ex. C, at 1.

Op. Br. at 26-27.