IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| KNIGHTEK, LLC, | § | |
| | § | No. 570, 2018 |
| Plaintiff Below, | § | |
| Appellant, | § | Court Below: Superior Court |
| | § | of the State of Delaware |
| v. | § | |
| | § | C.A. No. N18C-04-260 |
| JIVE COMMUNICATIONS, INC., | § | |
| | § | |
| Defendant Below, | § | |
| Appellee. | § | |

Submitted: November 20, 2019
Decided: January 27, 2020

Before **SEITZ**, Chief Justice; **VALIHURA**, **VAUGHN**, **TRAYNOR**, Justices; and **SLIGHTS**, Vice Chancellor,* constituting the Court *en Banc*.

Upon appeal from the Superior Court.  **REVERSED**.

Ryan P. Newell, Esq., (*argued*) Lauren P. DeLuca, Esq., CONNOLLY GALLAGHER LLP, Wilmington, Delaware; *Attorneys for Plaintiff-Appellant KnighTek, LLC*.

Rudolf Koch, Esq., Robert L. Burns, Esq., (*argued*) Nicole K. Pedi, Esq., RICHARDS, LAYTON & FINGER P.A., Wilmington, Delaware; William Trach, Esq., LATHAM & WATKINS LLP, Boston, Massachusetts; *Attorneys for Defendant-Appellee Jive Communications, Inc.*

**SEITZ**, Chief Justice:

---

* Sitting by designation under Del. Const. art. IV, § 12.

As alleged in the complaint, when Erik Knight sold KnighTek, LLC to Jive Communications, Inc., Jive agreed to pay Knight $100,000 upfront and a revenue-based payment stream capped at $4.6 million. The continuing payments would convert to a lump sum payment if Jive's ownership changed. Years later, Jive offered to cash out KnighTek for $1.75 million, a substantial discount from the remaining cap amount. According to Knight, Jive's representatives told him the buy-out money depended on KnighTek accepting the proposal right away. If it did not, Jive would use the funds for other buyouts. Jive's representatives also told Knight if he turned down the offer, it would take five years for Jive to make the remaining payments. Two days after KnighTek agreed to accept $1.75 million, Jive announced publicly it was being acquired by LogMeIn for $342 million—a change of control that according to KnighTek would have netted it a $2.7 million immediate payment under their earlier agreement.

Believing it had been misled and shorted about $1 million, KnighTek filed suit against Jive, alleging that Jive fraudulently induced KnighTek to take the discounted payout. According to KnighTek, Jive and its representatives knew about the imminent change of control, misrepresented the availability of buyout funds, and duped KnighTek into accepting a discount when KnighTek could have received almost $1 million more and an immediate payment after the LogMeIn transaction.

2

The Superior Court dismissed the complaint. As the court held, some of Jive's alleged misrepresentations lacked particularity and others failed to state a claim under Utah law, the law governing their agreements. We disagree, and find that, viewing the complaint in the light most favorable to KnighTek, accepting as true its well-pleaded allegations, and drawing all reasonable inferences that logically flow from those allegations, KnighTek alleged fraud with sufficient particularity and stated a claim for fraudulent misrepresentation under Utah law. Thus we reverse the Superior Court's dismissal and remand to the Superior Court for further proceedings.

I.

As alleged in the complaint, in March 2014, Jive purchased certain communication equipment and services businesses from KnighTek and a related entity. Under the Asset Purchase Agreement, KnighTek received $100,000 up front, payments based on future revenues subject to a $4,616,063.10 Cap Amount,[1] and warrants for 15,000 shares of Jive common stock if Jive met certain revenue goals. A related Agency Agreement accelerated the unpaid balance up to the Cap Amount

---

[1] The parties dispute the amount owed. KnighTek alleged that the Cap Amount, as defined under the Agency Agreement, was $4,616,063.10. App. to Opening Br. at A13 (Complaint ¶ 13, n.1 (hereinafter "Compl.")). Jive disputes this figure and points out that the Agency Agreement defines the Cap Amount as the product of certain financials, but "it does not state the Cap Amount directly." Appellee's Answering Br. at 7–8 (citing App. to Opening Br. at A57). This Court need not determine the correct amount of the Cap Amount to resolve this appeal.

3

upon any "Change of Control," which included a sale of substantially all of Jive's assets or a change in more than 50% of Jive's ownership.[2]

In September 2017, Knight, the sole owner of KnighTek before Jive's acquisition, contacted Jive to ask whether Jive would consider an accelerated lump-sum payment in return for a discount on the remaining Cap Amount. Jive declined Knight's proposal. Several months later, however, Jive's management changed their mind. On January 25, 2018, Jive's Vice President of Finance, Samuel Simmons, sent Knight an email offering to accelerate the unpaid balance of the Cap Amount in exchange for a discount. Simmons initially proposed discounting the $2,748,442.89 owed to a $964,928 lump-sum payment.[3] "[I]nstill[ing] a sense of urgency," Simmons also wrote that "[t]he proposal outlined above is based on availability of funds across multiple acquisitions and with a goal to complete by the end of January 2018."[4]

Negotiations between Simmons and Knight moved quickly. According to the complaint, "Simmons repeatedly emphasized that Jive had limited funds and that Jive was considering several other discount acceleration requests from other businesses that Jive had acquired."[5] For example, in a January 25, 2018 email,

---

[2] App. to Opening Br. at A46, A52 (Agency Agreement); App. to Opening Br. at A13 (Compl. ¶¶ 14–15).
[3] *Id.* at A14 (Compl. ¶¶ 19–20).
[4] *Id.* (Compl. ¶ 21).
[5] *Id.* (Compl. ¶ 22).

Simmons repeated his statement that he aimed to close "by the end of January" and stated that he was "juggling a number of other offers (some of which have already been accepted), so the sooner the better as availability of funds depends on who moves quickest and how beneficial the economics are."[6]  Also, KnighTek alleged that at some point during negotiations Jive represented "that if he failed to immediately agree to a discounted lump-sum payment, he would have to wait more than five years before the Cap Amount due would be fully satisfied."[7]

According to the complaint, Jive had been negotiating a sale to another company, LogMeIn, the entire time, and Jive's representatives knew about the acquisition while negotiating with Knight.  This sale transaction would trigger the "Change of Control" provision under the Agency Agreement, leading to an acceleration of the amount due under the Asset Purchase Agreement.

After some back and forth on price, Simmons and Knight reached a tentative agreement.  On February 5, 2018, Simmons sent Knight an email stating that the Jive board agreed to buy out KnighTek's interest for $1,750,000.  He emphasized again the need for speed: "I was able to get your buyout approved conditional on speedy completion, or they want me to move forward with someone else at this time given our goal date of the 31st that we're a little behind on."[8]  On February 6, after

---

[6] *Id.* at A14–15 (Compl. ¶ 23).
[7] *Id.* at A17 (Compl. ¶ 37).
[8] *Id.* at A15 (Compl. ¶ 24).

negotiating other terms, the parties executed the Acceleration Agreement. Jive wired $1,750,000 to KnighTek on February 7.

On February 8, a press release announced that LogMeIn was acquiring Jive for $342 million. According to the complaint, "[t]he preparation necessary to negotiate a large-scale acquisition of a company such as Jive requires weeks, if not months, of lead time."[9] After learning about the LogMeIn acquisition, KnighTek filed suit against Jive in the Superior Court for rescission of the Acceleration Agreement based on fraudulent misrepresentation and fraudulent concealment. The dispute is governed by Utah law.[10] The crux of KnighTek's complaint is that "Jive intentionally misrepresented to [Knight] that if he failed to immediately agree to a discounted lump-sum payment, Jive would use its limited funds to pay other businesses that were willing to accept a discounted payoff of monies still due from their acquisition by Jive," and that KnighTek "would have to wait more than five years before the Cap Amount due would be fully satisfied."[11]

Jive moved to dismiss under Superior Court Civil Rule 9(b) for failure to plead fraud with particularity and under Rule 12(b)(6) for failure to state a claim. As the

---

[9] *Id.* at A16 (Compl. ¶ 32).
[10] The Acceleration Agreement contains a Utah choice of law clause, and the parties do not dispute that Utah law applies to KnighTek's claims in this case.
[11] *Id.* at A17 (Compl. ¶¶ 37–38). KnighTek also claimed that Jive owed it fiduciary duties because KnighTek was a Jive warrant holder, and that Jive was obligated to disclose the merger even in the absence of any misrepresentation. *See id.* at A18–19 (Compl. ¶¶ 48–49).

Superior Court described it, Jive argued that "there is no well-ple[aded] allegation (1) of a false representation of presently existing fact, (2) that a 'representor' made a statement which they knew to be false or made recklessly, or (3) that KnighTek acted in a reasonable reliance."[12] The Superior Court granted Jive's motion and held that KnighTek failed to plead a number of its allegations with particularity and that the remainder of the allegations failed to state a claim for fraud.

As to particularity, the court found that, besides the statements expressly attributed to Simmons, the other alleged misrepresentations failed to meet the particularity requirement because they failed to name the individual who made the misrepresentations or the time and place they were made.[13] For the representations attributed to Simmons, the court found that "they constitute forward-looking predictions, opinion-type statements or subjective opinions, not statements concerning a presently existing material fact."[14] Further, the court held that "nowhere in the [c]omplaint does KnighTek allege Simmons'[s] representations were false, that Simmons knew them to be false, or made them recklessly, knowing he had insufficient knowledge upon which to base such representation."[15] And finally, the court found that KnighTek waived its ability to enforce the Change of

---

[12] *KnighTek, LLC v. Jive Commc'ns, Inc.*, 197 A.3d 493, 499 (Del. Sup. Ct. 2018). Jive also addressed KnighTek's fraudulent concealment claim, which is not on appeal.
[13] *Id.* at 502.
[14] *Id.* at 502–03 (citation omitted).
[15] *Id.* at 503.

7

Control provision because the Acceleration Agreement extinguished any claim and it "got what it negotiated and bargained for."[16]   In response to a motion for clarification by KnighTek, the Superior Court clarified that it dismissed KnighTek's complaint with prejudice.[17]

## II.

This Court reviews the Superior Court's dismissal of KnighTek's complaint *de novo*.[18]   "Dismissal is appropriate only if it appears with reasonable certainty that, under any set of facts that could be proven to support the claims asserted, the plaintiff would not be entitled to relief."[19]   We must "view the complaint in the light most favorable to the non-moving party, accepting as true its well-pled allegations and drawing all reasonable inferences that logically flow from those allegations."[20]   We may "not, however, simply accept conclusory allegations unsupported by specific facts, nor . . . draw unreasonable inferences in the plaintiff's favor."[21]

---

[16] *Id.* at 505.
[17] Opening Br. Ex. B.
[18] *Clinton v. Enter. Rent-A-Car Co.*, 977 A.2d 892, 895 (Del. 2009).
[19] *Id.* (citing *Feldman v. Cutaia*, 951 A.2d 727, 731 (Del. 2008)) (internal quotations omitted).
[20] *Id.*
[21] *Id.*

8

A.

KnighTek argues that the Superior Court erred when it dismissed its fraudulent misrepresentation claim.[22] According to KnighTek, its complaint "addresses each element required under Utah law to adequately state a claim for fraudulent misrepresentation, including allegations specifying the time, place, and contents of Jive's representations, the facts misrepresented, the identity of the person making the misrepresentations, and what Jive gained as a result of its malfeasance, as required under Rule 9(b)."[23] KnighTek points to Jive's misrepresentation of "its financial condition to cajole KnighTek to accept its discounted offer," while knowing "that it was only days away from its February 7, 2018 announcement of its $342 million sale to LogMeIn which would trigger its obligation to pay KnighTek in full," and its "repeated[] warn[ings]" that KnighTek "would not see full payment for at least another five years" even though the LogMeIn sale was imminent.[24]

Jive responds that the Superior Court properly dismissed KnightTek's complaint because the complaint "did not allege any false statements regarding presently existing material facts."[25] Jive argues that the complaint did not allege that

---

[22] KnighTek does not appeal the dismissal of the fraudulent concealment claim. Oral Argument Video at 2:34–58, https://livestream.com/accounts/5969852/events/8882483/videos/199124463 ("And just to avoid any confusion that may have arisen from the briefing, KnighTek is only pursuing its claim as to fraudulent misrepresentation.").

[23] Opening Br. at 3–4.

[24] *Id.* at 4–5.

[25] Answering Br. at 4.

Simmons's statements "were knowingly false," and at any rate, the statements were "non-actionable opinion or puffery-type statements" or "forward-looking projection[s]."[26] Jive also argues that the Superior Court correctly determined that certain of KnighTek's allegations fail Rule 9(b)'s particularity requirement.

B.

Under Superior Court Civil Rule 9(b), when pleading fraud claims, "[t]he circumstances constituting fraud . . . shall be stated with particularity," although "[m]alice, intent, knowledge and other condition of mind of a person may be averred generally."[27] Under the particularity requirement, a plaintiff must plead "the time, place, and contents of the false representations, as well as the identity of the person making the representation."[28]

We find that KnighTek has pled its fraud claim with sufficient particularity to meet the purpose of Rule 9(b)—"to enable an opponent to be informed of charges so as to be able to prepare a defense to them."[29] First, for Simmons's alleged misrepresentations—that Jive had limited funds to buy out KnighTek and Jive was

---

[26] *Id.*

[27] Super. Ct. Civ. R. 9(b).

[28] *Nutt v. A.C. & S., Inc.*, 466 A.2d 18, 23 (Del. Super. Ct. 1983) (internal quotations omitted); *see also Browne v. Robb*, 583 A.2d 949, 955 (Del. 1990) ("In cases of fraud the particularity required by Rule 9(b) includes 'the time, place and contents of the false representations . . . .'" (quoting *Nutt*, 466 A.2d at 23)).

[29] *Chesapeake and Potomac Tel. Co. of Md. v. Chesapeake Utils. Corp.*, 436 A.2d 314, 338 (Del. 1981); *see also Brown*, 583 A.2d at 955 ("The entire purpose of Rule 9(b) is to put the defendant on notice so that he can adequately prepare a defense.").

satisfying requests on a first-come, first-served basis—Jive does not contest the Superior Court's finding that these alleged representations meet Rule 9(b)'s requirements. The complaint attributes them to specific, dated emails from Simmons—providing the time, place, contents, and representor's identity.[30]

Second, we disagree with the Superior Court that KnighTek failed to allege the other misrepresentations with sufficient particularity. The Superior Court decided that Jive's alleged misrepresentations directed to the time KnighTek would have to wait to receive payment were deficient because KnighTek did not name the individual(s) who made the other representations or the time or place of the misrepresentations.[31] The complaint, however, attributes the alleged misrepresentation to "Jive."[32] While Jive is not a specific individual, when the complaint is read as a whole, the time, place, and individuals involved are set forth in the complaint. According to the complaint, the misrepresentations occurred during the Acceleration Agreement negotiations;[33] negotiations occurred with Simmons and Jive's General Counsel;[34] and they occurred over a short period of time, from January 25 to February 7 of 2018.[35] The complaint also refers to

---

[30] *KnighTek*, 197 A.3d at 502.
[31] *Id.*
[32] App. to Opening Br. at A10 (Compl. ¶ 2), A17 (Compl. ¶¶ 37, 40).
[33] *Id.*
[34] *Id.* at A15 (Compl. ¶ 25), A14–15 (Compl. ¶¶ 20–24).
[35] *Id.* at A14 (Compl. ¶ 22), A16 (Compl. ¶ 30).

Simmons as speaking for Jive.[36] While the complaint could have been more specific about the details of the alleged misrepresentations, we find that the allegations were sufficiently particular to put Jive on notice that at least Simmons made such misrepresentations during the Acceleration Agreement negotiations. Thus, viewing the complaint in the light most favorable to KnighTek, we find that the complaint satisfies Rule 9(b)'s particularity requirement.

C.

The Superior Court also found that KnighTek failed to plead adequately fraudulent misrepresentation. To state a claim for fraudulent misrepresentation under Utah law, a plaintiff must allege:

> (1) that a representation was made (2) concerning a presently existing material fact (3) which was false and (4) which the representor either (a) knew to be false or (b) made recklessly, knowing that there was insufficient knowledge upon which to base such a representation, (5) for the purpose of inducing the other party to act upon it and (6) that the other party, acting reasonably and in ignorance of its falsity, (7) did in fact rely upon it (8) and was thereby induced to act (9) to that party's injury and damage.[37]

Applying these requirements here, KnighTek must have alleged that the representations were false, concerned presently existing material facts, the

---

[36] *Id.* at A14 (Compl. ¶ 22) ("Mr. Simmons and [Knight] thereafter engaged in negotiations . . . in which Mr. Simmons repeatedly emphasized that Jive had limited funds and that Jive was considering several other discount acceleration requests from other businesses that Jive had acquired.").

[37] *Gold Standard, Inc. v. Getty Oil Co.*, 915 P.2d 1060, 1066–67 (Utah 1996); *see also Pace v. Parrish*, 247 P.2d 273, 274–75 (Utah 1952).

representor knew they were false, and KnighTek acted reasonably and in ignorance of their falsity.[38]

i.

Starting with the falsity issue, the Superior Court held that KnighTek did not allege that Simmons's statements about Jive's limited funds and satisfaction of a limited number of requests were false.[39] We disagree. Although the complaint does not use the words "this representation was false," it does allege that Jive "misrepresented" those facts.[40] To call something a "misrepresent[ation]" means that it is false.[41] To hold otherwise would elevate form over substance—relying on the technical absence of a particular word when the actual words used convey the same meaning.[42]

Further, a reasonable inference drawn from the complaint is that Jive was not short of cash and thus was not satisfying acceleration requests on a first-come, first-served basis. Instead, Jive made those misrepresentations to dupe KnighTek into a discounted payment when shortly thereafter KnighTek would be entitled to receive

---

[38] The Superior Court did not address the allegations attributed to Jive because it found that they did not meet the particularity requirement. Because we find that they do meet the requirement, and we review this dismissal *de novo*, we consider these allegations on appeal.

[39] *KnighTek*, 197 A.3d at 503.

[40] *See, e.g.*, App. to Opening Br. at A17 (Compl. ¶¶ 37–38).

[41] *See Misrepresentation*, Black's Law Dictionary (11th ed. 2019) ("The act or an instance of making a false or misleading assertion about something, usu. with the intent to deceive.").

[42] *See* Super. Ct. Civ. R. 8(f) ("All pleadings shall be so construed as to do substantial justice.").

almost $1 million more. The same reasoning applies to Jive's alleged misrepresentation that KnighTek would have to wait five years to be paid the net Cap Amount.[43]

The Superior Court also found the complaint deficient because KnighTek did not allege that Simmons knew his statements were false. But the complaint alleged that "the officers and directors of Jive, including the individuals who negotiated the Acceleration Agreement with [Knight], knew at all relevant times that a Change of Control was imminent which would have required Jive to make full payment to KnighTek of the Cap Amount due."[44] It is not necessary under Rule 9(b) to plead knowledge or intent with particularity,[45] and as an "individual[] who negotiated the Accelerated Agreement with [Knight]," that allegation includes Simmons.[46]

KnighTek also alleged that Jive "intentionally" misrepresented its financial position and its intention to pay off other businesses—meaning the representor, Jive, intended to provide false information.[47] The same is true for Jive's representation that KnighTek would have to wait five years for a full payout. KnighTek alleged

---

[43] Jive contests the importance of the merger announcement because an announcement would not have triggered the Change of Control provision. Answering Br. at 13. But Jive does not contest that the actual merger would have been the triggering event under the Change of Control provision, and the merger occurred on April 3, 2018, two months after the announcement.

[44] App. to Opening Br. at A16 (Compl. ¶ 35).

[45] *See* Super. Ct. Civ. R. 9(b) ("Malice, intent, knowledge and other condition of mind of a person may be averred generally.").

[46] App. to Opening Br. at A16 (Compl. ¶ 35).

[47] *Id.* at A17 (Compl. ¶ 38).

14

that Jive "intentionally misrepresented,"[48] and the individual negotiators knew "at all relevant times that a Change of Control was imminent."[49] A reasonable inference from those allegations is that the representations were false and that the representor knew they were false.

ii.

The Superior Court also held that Simmons's representations did not concern any presently existing material fact. Instead, the court found that these statements were "forward-looking predictions, opinion-type statements or subjective opinions," which "do not constitute fraud" under Utah law.[50]

Although subjective opinions and forward-looking predictions generally do not constitute actionable fraud under Utah law,[51] there is a distinction between forward-looking predictions or opinions that are subject to uncertainty and predictions or opinions that the speaker knows are false. For example, in *Crookston v. Fire Insurance Exchange*,[52] a representative from the defendant insurance company told the plaintiff insureds that the insurance company was not yet in a

---

[48] *Id.* (Compl. ¶ 37).
[49] *Id.* at A16 (Compl. ¶ 35).
[50] *KnighTek*, 197 A.3d at 502.
[51] *See Wright v. Westside Nursery*, 787 P.2d 508 (Utah Ct. App. 1990) (finding that the defendant's representation about a property's value was not actionable as fraud because the evidence supported that the defendant's valuation was done in good faith as it was consistent with property tax assessments and otherwise lacked evidence of bad faith).
[52] 817 P.2d 789, 800 (Utah 1991).

15

position to settle certain claims, and he would include the plaintiffs in any settlement negotiations. It turned out, however, that the insurance representative knew that he was prepared to settle and, contrary to his assurances, did so the same day without the plaintiffs' involvement in an agreement with the loss payee.[53] The Utah Supreme Court held that such evidence supported a jury's finding that the insurance representative's statements were actionable fraud.[54]

In this case, KnighTek alleged that Simmons represented that "Jive had limited funds[,] . . . Jive was considering several other discount acceleration requests from other businesses," and Jive's "availability of funds depend[ed] on who moves quickest."[55] These representations, along with the allegations about the five-year wait as an alternative to a discounted payment, are no less representations concerning "presently existing material fact[s]" than the representations in *Crookston*. Like the company in *Crookston* that represented the company's readiness to settle certain insurance claims, Simmons represented that Jive's position

---

[53] *Id.* at 793–95, 800.

[54] *Id.* at 800; *see also Cerritos Trucking Co. v. Utah Venture No. 1*, 645 P.2d 608, 611 (Utah 1982) ("The jurisprudence of this state has long recognized as actionable deceit a promise accompanied by the present intention not to perform it, made for the purpose of deceiving the promissee, thereby inducing him to act where otherwise he would not have done so . . . ."); *Andalex Res., Inc. v. Myers*, 871 P.2d 1041, 1047 (Utah Ct. App. 1994) ("A misrepresentation of intended future performance is not a 'presently existing fact' upon which a claim for fraud can be based unless a plaintiff can prove that the representor, at the time of the representation, did not intend to perform the promise and made the representation for the purpose of deceiving the promisee.").

[55] App. to Opening Br. at A14–15 (Compl. ¶¶ 22–23), A17 (Compl. ¶ 38) ("Jive intentionally misrepresented to [KnighTek] that if he failed to immediately agree to a discounted lump-sum payment, Jive would use its limited funds to pay other businesses that were willing to accept a discounted payoff . . . .").

did not allow it to satisfy all acceleration requests. Jive also represented that KnighTek would have a five-year wait for full payment if it did not accept the discount. In both cases, the speaker made what could be construed as a forward-looking statement but the representor knew it would not occur—in *Crookston*, the plaintiffs would be in settlement negotiations; here, Jive was juggling multiple acceleration requests with limited funds, and KnighTek would have to wait five years for payment if it did not accept the discount.

Jive's representations were objective and verifiable.[56] They describe how Jive intended to use the funds and what would happen if KnighTek did not accept the discount quickly. Viewing the facts in the light most favorable to KnighTek, the reasonable inference is that KnighTek's allegations involve presently existing material facts.

iii.

Turning to whether KnighTek acted reasonably and in ignorance of the representations' falsity, KnighTek alleged that it acted in ignorance of the representations' falsity.[57] The Superior Court found, however, that KnighTek did

---

[56] *See Boud v. SDNCO, Inc.*, 54 P.3d 1131, 1135–36 (Utah 2002) (finding that a statement was an affirmation of fact if it was "objective in nature, i.e., verifiable or capable of being proven true or false," as opposed to an opinion, which is subjective and open to reasonable disagreement).

[57] App. to Opening Br. at A17–18 (Compl. ¶¶ 42–43) (KnighTek "was purposefully kept in ignorance of the impending Change of Control" and "relied on Mr. Simmons'[s] misrepresentations and was thereby induced to sign the Acceleration Agreement.").

17

not act reasonably. According to the court, because KnighTek was negotiating at arm's length with Jive, it "was obligated to take reasonable steps to inform itself with respect to its preexisting contractual rights"—the Change of Control provision.[58] As the court held, the complaint did not allege that KnighTek performed any due diligence into whether the Change of Control provision might soon be triggered.[59] As a result, the court concluded that "KnighTek cannot reasonably rely on a representation it failed to seek."[60] We disagree.

The Superior Court correctly observed that Utah law, like the law of most jurisdictions, generally expects that a party engaged in arms-length contract negotiations will make reasonable inquiries of its contractual counter-party before committing to a final agreement.[61] But a party need not make inquiry when the counter-party "knows [certain facts] to be necessary to prevent his partial or ambiguous statement of the facts from being misleading."[62]

The misrepresentations alleged in the complaint, taken together, support a reasonable inference that Jive led KnighTek away from any inquiry by intentionally concealing the LogMeIn sale negotiations and pressing for a quick decision on the

---

[58] *KnighTek*, 197 A.3d at 503.
[59] *Id.* at 503–04.
[60] *Id.* at 504.
[61] *Id.* at 503 (citing *Sugarhouse Finance Co. v. Anderson*, 610 P.2d 1369, 1373 (Utah 1980)).
[62] *First Sec. Bank of Utah N.A. v. Banberry Dev. Corp.*, 786 P.2d 1326, 1330–31 (Utah 1990) (citing RESTATEMENT (SECOND) OF TORTS § 551 (1977)).

discounted cash-out proposal. As noted earlier, Jive represented that its ability to pay depended on the availability of funds and KnighTek's speed.[63] The alternative to taking a discounted payment was to wait five years for full payment.[64] These allegations raise a fair inference that, from KnightTek's perspective, Jive could only make these representations truthfully if Jive were not contemplating an imminent Change of Control transaction that would trigger a right to full payment. Because KnighTek reasonably relied on the truthfulness of Jive's affirmative representations about the availability of funds and its alternative, the complaint raises a fair inference that KnighTek likewise reasonably relied on the implicit representation that there was no imminent Change of Control. If these pled facts are proven, then KnightTek would have no reason or obligation to inquire whether any of those representations, express or implicit, were truthful.[65]

---

[63] App. to Opening Br. at A14 (Compl. ¶ 21).

[64] *Id.* at A17 (Compl. ¶ 37).

[65] *See Pace*, 247 P.2d at 276 ("Defendants suggest that the plaintiffs had no right to rely on the representations made by defendant, but were bound to make more careful and complete inquiry concerning such matters. . . . The full measure of the plaintiffs' duty was to use reasonable care and observation in connection with these representations. Having done so, it does not lie in defendant's mouth to say that they were too gullible and shouldn't have believed him."). In *Sugarhouse Finance Co. v. Anderson*, 610 P.2d 1369, 1373 (Utah 1980), the Utah Supreme Court found that a plaintiff is obligated "to take reasonable steps to inform himself" when dealing at arm's length. There, however, the court found that the plaintiff could not reasonably rely on the defendant's alleged omissions when there was no duty to speak. *Id.* at 1373–74 (plaintiff alleged fraud "in defendant's failure to state . . . and in his failure to disclose"). The case here is different. Rather than omissions, KnighTek relied on Jive's affirmative representations and their necessary implications, which were strong enough to reasonably lead KnighTek astray from inquiring further. Jive cannot claim later that KnighTek "shouldn't have believed [it]." *Pace*, 247 P.2d at 276.

KnighTek and Jive are both sophisticated parties, there was a significant percentage of the Cap Amount in dispute, and having a contractual representation regarding future changes in control might have been more prudent and efficient. But under these alleged facts and Utah law, KnighTek's reliance on the truth of Jive's assertions and the associated implication that there was not an imminent Change of Control—especially under Jive's manufactured deadline—deserves a pleading stage inference of reasonableness.

## D.

Finally, KnighTek argues that the Superior Court erred when it found that the Acceleration Agreement barred KnighTek's fraud claim. The Superior Court found that KnighTek waived its Change of Control rights by entering into the Acceleration Agreement because, under the agreement, the receipt of payment deemed all of Jive's obligations "fully paid, discharged, satisfied, released and terminated."[66] The court held that any post-Agreement transaction was irrelevant because "KnighTek got what it negotiated and bargained for"—a lump sum payment immediately, which KnighTek believed was discounted, rather than future payments that KnighTek believed would be higher.[67]

---

[66] *KnighTek,* 197 A.3d at 505 (quoting App. to Opening Br. at A60 (Acceleration Agreement)).
[67] *Id.*

20

Under Utah law, however, "a release will be voidable if it was an integral part of a scheme to defraud."[68] Jive knew it would soon be liable for its entire obligation under the Change of Control provision, but misrepresented the circumstances to reduce its obligations prior to the merger. The release of future obligations was necessary for the alleged fraud to benefit Jive. And because KnighTek has adequately pleaded fraudulent misrepresentation under Utah law, the release would be void if Jive defrauded KnighTek.

### III.

KnighTek's complaint alleged adequately a claim for fraudulent misrepresentation, and the claim was not waived. We reverse the Superior Court's dismissal and remand for further proceedings consistent with this opinion. Jurisdiction is not retained.

---

[68] *Ong Intern. (U.S.A.) Inc. v. 11th Ave. Corp.*, 850 P.2d 447, 453 (Utah 1993); *see Lamb v. Bangart*, 525 P.2d 602, 608 (Utah 1974) ("[A] contract clause limiting liability will not be applied in a fraud action. The law does not permit a covenant of immunity which will protect a person against his own fraud on the ground of public policy. A contract limitation on damages or remedies is valid only in the absence of allegations or proof of fraud.").